Filed 7/3/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| NEAL A. ROBERTS et al., | B240452 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC459259) |
| v. | |
| PACKARD, PACKARD & JOHNSON, | |
| Defendant and Respondent. | |


APPEAL from orders of the Superior Court of Los Angeles County, Ronald M. Sohigian, Judge.  Reversed.

Mayer Brown, Neil M. Soltman, Matthew H. Marmolejo and Ruth Zadikany for Plaintiffs and Appellants.

Hinshaw & Culbertson, Ronald E. Mallen, Kendra L. Basner and Daniel Sanchez-Behar for Defendant and Respondent.

_____

Plaintiffs filed this lawsuit against their former attorneys, alleging causes of action for breach of fiduciary duty, conversion, and declaratory relief. In essence, plaintiffs alleged that their former attorneys had settled several prior lawsuits brought on their behalf and did not allocate a sufficient amount of the settlement funds to the costs of suit, making plaintiffs liable to the former attorneys for costs that were actually recovered as part of the settlements. In the lawsuit, the former attorneys filed a petition to compel arbitration of plaintiffs' causes of action pursuant to an arbitration provision in the parties' contingency fee agreement. The trial court granted the petition.

The question on appeal is whether the trial court properly awarded attorney fees to the former attorneys as the prevailing parties on the petition to compel arbitration, which was filed in the pending lawsuit, even though the resolution of the underlying causes of action are to be determined through arbitration, and the prevailing party on those claims will not be known until arbitration is completed.

We conclude that because only *one* side—plaintiffs *or* their former attorneys—can prevail in enforcing the contingency fee agreement, the determination of the prevailing parties must await the resolution of the underlying claims by an arbitrator. Attorney fees can be awarded only to the parties that prevail in the "action." (See Civ. Code, § 1717, subds. (a), (b)(1).) It follows that the trial court erred in awarding interim attorney fees to the former attorneys for filing a successful petition to compel arbitration.

# I

## BACKGROUND

Plaintiffs' underlying causes of action are succinctly described in the opening brief and do not affect whether the trial court erred in awarding attorney fees to plaintiffs' former attorneys. We therefore rely on plaintiffs' description of their claims.

"Until 2011, [the law firm of Packard, Packard & Johnson (PPJ)] acted as counsel to Plaintiffs[, Neal Roberts and Norman Rille,] in a series of cases brought in the United States District Court for the Eastern District of Arkansas on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729 et seq. ('FCA'), against a number of technology companies (the 'FCA Cases'). . . . PPJ's contingency fee agreement (the 'Fee Agreement') contained a broad arbitration clause covering '[a]ny dispute or controversy to

2

enforce or interpret any term or provision of this Agreement, to recover any sum due pursuant to this Agreement, in connection with the services rendered by [PPJ], . . . and/or in connection with any dispute, in law or equity, between the Parties.' . . . According to the Fee Agreement, PPJ's compensation was to be 43.5% of Plaintiffs' recoveries in the FCA cases plus 100% of all statutory attorney's fees, and costs and expenses awarded to Plaintiffs from the FCA defendants under 31 U.S.C. § 3730(d). . . . The Fee Agreement separately provided that PPJ would be reimbursed for all costs and expenses incurred in connection with all FCA Cases. . . . Plaintiffs thus remained responsible for all costs not sought and recovered by PPJ from the FCA defendants.

"In 2009 and 2010, the United States and certain FCA defendants settled several [of] the first FCA Cases instituted by Plaintiffs on behalf of the United States. . . . Following these settlements, Plaintiffs negotiated with the United States to determine their statutory share of the amounts received by the United States in settlement. See 31 U.S.C. § 3730(d). Upon resolution of Plaintiffs' statutory share, Plaintiffs had the right to recover their attorneys' fees, costs and expenses from the FCA defendants. See *id.* . . . PPJ then negotiated settlements of statutory fees, costs and expenses.[1] . . . These statutory fees and costs settlements totaled approximately $2.6 million. . . . But PPJ settled with each defendant in the settling cases for single, undifferentiated lump sum amounts, which did not identify the portions that were for attorneys' fees, and those that were attributable to costs and expenses. . . . PPJ then allocated to its attorneys' fees over 95% of the $2.6 million in fees, costs and expenses received in the settlements; it consequently attributed less than 5% of the settled amounts to costs and expenses. . . . That . . . allocation . . . was to the

---

**1** "When settled or litigated to a judgment for the United States, the FCA cases create three statutorily authorized pools of funds payable to FCA plaintiffs (known as Relators in FCA cases): (1) the statutorily mandated share (ranging from 15% to 25%) of what the United States received from the FCA defendants by way of settlement or judgment, called the Relators' Share; (2) an amount from the defendants to reimburse Plaintiffs for their reasonable attorneys' fees; and (3) an amount from the defendants to reimburse Plaintiffs for their reasonable litigation costs and expenses. 31 U.S.C. § 3730(d)."

economic detriment of Plaintiffs because any attorneys' fees received were claimed to be solely to PPJ's benefit (since they claimed the right to 100% of statutory fees), while recovered costs and expenses were to Plaintiffs' benefit (since they were obligated to pay all costs out of the underlying merits settlements, whether or not recovered from the settling defendants).[2] . . . Thus, the greater the allocation of the lump sum settlements to PPJ's fees, the greater would be Plaintiffs' remaining obligation to pay unreimbursed costs.

"After making these . . . allocations, PPJ demanded that Plaintiffs reimburse it an additional $1.338 million for 'unpaid' and 'unrecovered' costs out of the Relators' Share of a particular settlement. . . . When Plaintiffs refused, . . . PPJ refused to disburse to Plaintiffs $1.338 million from Plaintiffs' portion of the Relators Share. . . .

"After PPJ repeatedly refused, over a six-month period, to release the $1.338 million, Plaintiffs filed [this lawsuit] in April 2011." In May 2011, plaintiffs filed a first amended complaint (complaint). It contained causes of action for breach of fiduciary duty, conversion, and declaratory relief. The complaint prayed for an order directing Packard, Packard & Johnson (PPJ) to pay plaintiffs $1.338 million and for declaratory relief to the same effect.

In June 2011, PPJ filed a petition in this lawsuit, seeking to compel arbitration pursuant to the arbitration provision in the parties' contingency fee agreement. Plaintiffs filed an opposition, contending the agreement, including the arbitration provision, was void because the agreement did not describe "how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingency fee and the client's recovery." (Bus. & Prof. Code, § 6147, subd. (a)(2).) Plaintiffs argued in the alternative that PPJ had waived the right to arbitration by failing to initiate arbitration within a reasonable time.

---

**2** "Because PPJ took the position that the fees and costs settlements were solely their property, they did not seek or obtain Plaintiffs' prior approval for the fee settlement agreements. . . ."

By order dated November 15, 2011, the trial court determined that plaintiffs' claims arose under the contingency fee agreement, more specifically, the provisions of the agreement describing PPJ's compensation and allocating the Relators' Share and the statutory attorney fees and statutory costs recovered. The trial court also concluded that plaintiffs' claims fell within the scope of the arbitration provision and rejected plaintiffs' contentions that the agreement was void and that PPJ had waived the right to arbitration. The trial court granted the petition to compel arbitration, stayed the lawsuit, scheduled a status conference for February 16, 2012, and retained jurisdiction over the suit.[3]

On December 16, 2011, PPJ filed a motion for attorney fees and costs, arguing that it was entitled to an award of $67,292 under the contingency fee agreement because it had prevailed on the petition to compel arbitration. The contingency fee agreement stated: "If any *action* arising out of this Agreement is instituted by any Party against another Party, the prevailing Party shall be entitled to recover from the non-prevailing Party reasonable attorneys' fees and costs." (Italics added.) In its motion, PPJ asserted that the petition to compel arbitration was an "action" to enforce the contingency fee agreement, and PPJ was the "prevailing party" in that action.

Plaintiffs filed an opposition, asserting that the petition to compel arbitration was not an "action" because the petition was filed in the existing lawsuit. According to plaintiffs, the trial court could not determine which parties, if any, had prevailed until after the arbitrator had resolved their causes of action.

In a reply, PPJ increased the amount of its request for attorney fees and costs to $67,930.50, which reflected additional work done in support of the pending motion.

In a hearing conducted on February 9, 2012, the parties presented argument on the motion for attorney fees and costs. The trial court commented that "the result in [this] case

---

[3] The "Case Summary" in this lawsuit, which shows the docket entries in the trial court, states at the top of the first page: "**Status**: Dismissed - Binding Arbitration." But the record on appeal reflects that the trial court retained jurisdiction over the suit after granting the petition to compel arbitration, and the Case Summary does not contain a docket entry regarding a dismissal.

5

is not squarely required or mandated by appellate authority . . . , but it seems . . . on balance the movants have the better of it."  By minute order dated February 9, 2012, and an order signed on March 16, 2012, the trial court granted the motion and awarded PPJ $67,930.50 in attorney fees and costs.  Plaintiffs filed an appeal from both orders.[4]

## II

## DISCUSSION

On appeal, the parties treat all of plaintiffs' causes of action as if they are based on the contingency fee agreement.  Put another way, they treat the complaint as giving rise to "an action to enforce" the parties' contingency fee agreement.

The parties debate whether the trial court properly awarded attorney fees to defendants for prevailing on their petition to compel arbitration, which was filed in this lawsuit.  Because only *one* side—plaintiffs *or* their former attorneys—can prevail in enforcing the contingency fee agreement, we conclude the determination of the prevailing parties must await the resolution of plaintiffs' causes of action by an arbitrator.  Then, the trial court can determine which parties, if any, prevailed in the "action" and award attorney fees as permitted by the fee provision in the parties' contingency fee agreement.  The trial court therefore erred in awarding defendants attorney fees for filing a successful petition to compel arbitration.

This appeal rests on the application of Civil Code section 1717 (section 1717), which provides:  "In any *action* on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then *the* party who is determined to be

---

[4] Although the order granting the petition to compel arbitration is not appealable (see Code Civ. Proc., § 1294, subds. (a)–(e)), the orders awarding attorney fees and costs are "'appealable as a final determination of a collateral matter distinct and severable from the general subject of the litigation.'"  (*Acosta v. Kerrigan* (2007) 150 Cal.App.4th 1124, 1128, fn. 4, accord, *Lachkar v. Lachkar* (1986) 182 Cal.App.3d 641, 645, fn. 1.)  In their appellate briefs, the parties address only the orders awarding attorney fees, and this appeal is limited to those orders.

*the* party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a), italics added.) "The court . . . shall determine who is *the* party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. . . . [*T*]*he* party prevailing on the contract shall be *the party who recovered a greater relief in the **action** on the contract*. The court may also determine that there is no party prevailing on the contract for purposes of this section." (*Id.*, subd. (b)(1), italics & boldface added.)

"In construing [a] statute, we follow '"[t]he fundamental rule . . . that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . ." . . . In determining that intent, we first examine the words of the statute itself. . . . Under the so-called "plain meaning" rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. . . . If the language of the statute is clear and unambiguous, there is no need for construction. . . . However, the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. . . . If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history . . . . '"We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' . . ." . . . The legislative purpose will not be sacrificed to a literal construction of any part of the statute. . . .'" (*Paleski v. State Dept. of Health Services* (2006) 144 Cal.App.4th 713, 728–729.) Here, the language of section 1717 is clear and unambiguous.

By referring to "the" prevailing party and stating that "*the* party prevailing on the contract shall be *the* party who *recovered a greater relief* in the action on the contract" (italics added), section 1717 contemplates that only one side in a lawsuit can be the prevailing party, and the prevailing party determination cannot be made until the parties' requests for relief—here, plaintiffs' causes of action—have been resolved either in court or, as in this case, arbitration.

7

Further, section 1717 authorizes an award of attorney fees in "any *action* on a contract" and provides that the prevailing party is the party who recovers "a greater relief in the *action* on the contract." (Italics added.) Similarly, the attorney fee provision in the parties' contingency fee agreement states that "[i]f any *action* arising out of this Agreement is instituted by any Party against another Party, the prevailing Party shall be entitled to recover from the non-prevailing Party reasonable attorneys' fees and costs." (Italics added.) We discern no difference between the meaning of "action" as used in section 1717 and in the parties' agreement.

"Action" means "[a] civil or criminal judicial proceeding. . . . [¶] 'An action has been defined to be an ordinary proceeding in a court of justice, by which one party *prosecutes* another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. But in some sense this definition is equally applicable to special proceedings. More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree. The action is said to *terminate at judgment*'" (Black's Law Dict. (9th ed. 2009) p. 32, col. 2, italics added), and, under California law, a "judgment" is equivalent to a final "order" (Cal. Rules of Court, rule 8.10(4)).

Dictionary definitions aside, California statutes define an "action" as "an ordinary proceeding in a court of justice by which one party *prosecutes* another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22, italics added.) "A civil action is *prosecuted* by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." (*Id.*, § 30, italics added.)

Case law recognizes that a "'[c]ivil action' does not have a different meaning from 'civil suit.' . . . 'The common understanding of an "action to enforce" is that it is a proceeding initiated by the filing of a claim. Thus, an action not only encompasses the complaint "but refers to *the entire judicial proceeding* . . . and is generally considered synonymous with 'suit.'""" (*Westamerica Bank v. MBG Industries, Inc*. (2007) 158 Cal.App.4th 109, 134, italics added in *Westamerica Bank*.)

8

Procedural steps taken during pending litigation are not an "action" within the meaning of section 1717. As explained by one Court of Appeal: "An 'action to enforce' does not refer to specific pleadings or *steps within the action* or a defense. Thus, a demurrer does not constitute 'an action to enforce' a right. A demurrer is a pleading that challenges the legal sufficiency of another pleading. . . . 'The function of a demurrer is to test the sufficiency of a pleading by raising questions of law.' . . . A demurrer is not 'prosecuted' against another . . . and therefore is not an 'action to enforce.' '[A] "defense" is "[t]hat which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks[; . . . [ ] it is a] response to the claims of the other party, setting forth reasons why the claims should not be granted." . . .' . . . That the common meaning of 'action'—as in an 'action to enforce'—*does not include procedural steps* such as a demurrer or other defenses is illustrated by the following passage in an authoritative work: 'The broad definition [of action] covers the following: (1) [S]uits at law or in equity. . . . (2) Certain adversary proceedings that take place during a probate proceeding. . . . (3) Actions for declaratory relief. . . . (4) Actions for divorce (dissolution of marriage). . . .' . . . There is nothing in this passage to suggest that a defensive matter raised by a demurrer is included in the term 'action.'" (*Salawy v. Ocean Towers Housing Corp*. (2004) 121 Cal.App.4th 664, 672–673, citations omitted, italics added & omitted.)

Based on the plain meaning of section 1717, we conclude that a petition to compel arbitration *filed in a pending lawsuit* is not an "action," and attorney fees cannot be awarded to the prevailing party, if any, until the requests for relief—the causes of action—are ultimately resolved. When such a petition is granted, the proceedings have not "terminate[d]." (Black's Law Dict., *supra*, at p. 32, col. 2.) The underlying causes of action must still be heard by an arbitrator. Consequently, in ruling on the petition to compel arbitration, the trial court cannot yet determine which party, if any, "recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) Nor can the ruling on a petition to compel arbitration, when filed in a pending lawsuit, be equated with """"the entire judicial proceeding."""" (*Westamerica Bank v. MBG Industries, Inc*., *supra*, 158 Cal.App.4th at p. 134, italics omitted.) And "the common meaning of 'action'—as in an 'action to

9

enforce'—does not include procedural steps [in the litigation]." (*Salawy v. Ocean Towers Housing Corp.*, *supra*, 121 Cal.App.4th at p. 673.) Here, defendants' petition to compel arbitration was merely a procedural step in ongoing litigation. It was not "prosecuted" against another. (See Code Civ. Proc., §§ 22, 30.) Nor was it an "action" under section 1717.

If the Legislature intended to allow an award of attorney fees when a trial court rules on a petition to compel arbitration filed in a pending lawsuit, it could have done so expressly. For example, in enacting Code of Civil Procedure section 425.16—which permits a special motion to strike a "strategic lawsuit against public participation" or SLAPP—the Legislature authorized an appeal of an order granting *or* denying an anti-SLAPP motion. (Code Civ. Proc., § 425.16, subd. (i).) When an anti-SLAPP motion is granted, resulting in the dismissal of a lawsuit, "a prevailing defendant . . . shall be entitled to recover his or her attorney's fees and costs." (*Id.*, subd. (c)(1).) And when an anti-SLAPP motion is denied and the lawsuit will go forward, a prevailing plaintiff can recover his or her attorney fees "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay." (*Ibid.*) Similarly, the Legislature has expressly provided that interim attorney fees shall be awarded to a party that prevails on specified discovery motions unless the trial court finds that the losing party acted with substantial justification or that other circumstances make the imposition of attorney fees unjust. (See, e.g., Code Civ. Proc., §§ 2023.030, subd. (a), 2025.450, subd. (g), 2025.480. subd. (j), 2025.520, subd. (h), 2030.290, subd. (c), 2030.300, subd. (d), 2031.300, subd. (c), 2031.310, subd. (h), 2031.320, subd. (b), 2033.280, subd. (c), 2034.470, subd. (g); *Acosta v. Kerrigan*, *supra*, 150 Cal.App.4th at p. 1132 & fn. 17; *Ghanooni v. Super Shuttle* (1993) 20 Cal.App.4th 256, 259–261.) Yet, in drafting section 1717, the Legislature did not include a provision authorizing an award of attorney fees to any party when a petition to compel arbitration filed in a pending lawsuit is granted.

Before discussing specific cases that have applied section 1717 in the context of petitions to compel arbitration, we summarize the guiding principles distilled from case law on that subject: "It is true . . . that arbitration is categorized as a '"special proceeding of a civil nature."' . . . But there is no *separate* proceeding here. There is an 'analytic

10

distinction' between a motion (or petition) to compel arbitration *filed within an existing* [*lawsuit*,] as here, and a petition to compel arbitration that *commences an independent* [*lawsuit*]. . . . 'A party may file a petition to enforce an arbitration agreement *as an independent lawsuit if there is no pending lawsuit*; otherwise, the party must file the petition in the pending lawsuit.' . . . A petition to compel arbitration *filed in a pending lawsuit* is 'part of the underlying action'; it is *not* a distinct action." (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 772, some italics added.) Applying these principles in the case before us, the trial court erred because it awarded attorney fees in connection with a petition to compel arbitration that was "filed within an existing [lawsuit]." (*Ibid.*) The petition did not commence an "independent lawsuit" or constitute a "distinct action"; it was part of the underlying proceeding. Simply put, the petition did not initiate the litigation; plaintiffs' original complaint did.

"[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made *only upon final resolution of the contract claims* and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876, italics added.)

In *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, the plaintiffs entered into a construction contract with the defendants that required the defendants to build a 2-story, 10-unit apartment building. The contract required the arbitration of any controversy arising out of the project or regarding the interpretation of the contract. On December 23, 1980, the plaintiffs filed a complaint against the defendants in superior court, alleging breach of contract and other causes of action. The complaint also mentioned the existence of the arbitration provision in the parties' contract and asserted that the plaintiffs "'are therefore entitled to have the present action arbitrated.'" (*Id.* at p. 781.) The plaintiffs later explained they had filed the complaint to obtain the defendants' answer and affirmative defenses so they would be better prepared to litigate their causes of action in arbitration. (*Ibid.*) But to the plaintiffs' disappointment, the defendants responded to the

11

complaint with a demurrer, which was sustained with leave to amend. Undaunted, the plaintiffs filed a shorter version of the original complaint which, like the original, acknowledged the arbitrability of the dispute. The defendants filed another demurrer, asserting that the plaintiffs had waived the right to arbitration. In response, the plaintiffs dismissed the lawsuit without prejudice before the hearing on the demurrer.

Two months later, the plaintiffs commenced an independent proceeding by filing a petition to compel arbitration of the parties' dispute. The trial court denied the petition, finding that the plaintiffs had waived the right to arbitration in the prior suit "by litigating their complaint through a demurrer and a first amended complaint for the purpose of 'unilateral discovery' and at all times intending to dismiss [the prior litigation]." (*Christensen v. Dewor Developments*, *supra*, 33 Cal.3d at p. 781.) The defendants requested an award of attorney fees in the second proceeding because they had successfully opposed the plaintiffs' petition to compel arbitration. The trial court denied the request. The Supreme Court affirmed the trial court's denial of the plaintiffs' petition to compel arbitration but reversed the denial of the defendants' request for attorney fees. The high court concluded that, under section 1717, the defendants were the prevailing parties in the second lawsuit, which was a discrete proceeding involving only the petition to compel arbitration. (*Christensen*, at pp. 786–787.)

In *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, San Diego County Expressway, L.P. (Expressway), entered into three separate contracts with Otay River Constructors (Otay) for the construction of two projects. Two of the three contracts mandated that disputes be resolved through binding arbitration. The remaining contract required that disputes be submitted to a nonbinding "Dispute Resolution Board" and, if necessary, civil litigation. Otay demanded that Expressway submit two disputes to arbitration. Expressway refused, contending that both disputes arose under the contract that did not require binding arbitration. Otay then commenced an independent proceeding by filing a petition to compel arbitration of the disputes. Expressway opposed the petition. The trial court denied the petition, agreeing with Expressway that the disputes arose under the contract that permitted civil litigation. Expressway filed a motion for attorney fees based on an attorney fee provision in the contract, asserting "it was the prevailing party on

12

the contract because it obtained a final order denying Otay's petition to compel arbitration." (*Id.* at p. 801.) The trial court denied the motion for attorney fees.

The Fourth District Court of Appeal, Division One, reversed, explaining: "Otay's petition to compel arbitration under the [contract] was an 'action on the contract' for purposes of Civil Code section 1717. Expressway obtained a "'simple, unqualified win"' on the only contract claim at issue in the action—whether to compel arbitration under the [contract]. . . . Accordingly, Expressway was the prevailing party as a matter of law because it defeated the only contract claim before the trial court in this discrete special proceeding. . . .

"Otay contends the trial court properly determined that Expressway was not a prevailing party because Expressway obtained only an interim procedural victory. Otay, however, cited no persuasive authority supporting its contention and we reject it because courts have awarded attorney fees to a party obtaining an appealable order or judgment in a discrete legal proceeding even though the underlying litigation on the merits was not final." (*Otay River Constructors v. San Diego Expressway*, *supra*, 158 Cal.App.4th at p. 807, citing *Christensen v. Dewor Developments*, *supra*, 33 Cal.3d at pp. 786–787.) In other words, the award of attorney fees to Expressway was authorized by section 1717 because the independent proceeding initiated by Otay—the filing of the petition to compel arbitration—had terminated in Expressway's favor.

In *Turner v. Schultz* (2009) 175 Cal.App.4th 974, the plaintiff, Joe Turner, entered into a "Buy/Sell Agreement II" with the company that employed him and in which he was a shareholder. Two other shareholders were parties to the agreement. Included in the agreement was a formula for buying back the shares of a shareholder who was terminated as an employee of the company. The agreement contained an arbitration clause requiring that any controversy or claim arising out of the agreement be resolved through binding arbitration before the American Arbitration Association (AAA). An attorney fee provision was also included, stating: "'In the event any legal action or arbitration is commenced of any kind or character, to enforce the provisions of this Agreement or to obtain damages for breach thereof, the prevailing party in such action shall be entitled to all costs and reasonable attorney's fees incurred in connection with such action.'" (*Id.* at p. 979.)

13

The company terminated Turner, and he was dissatisfied with the amount offered to buy back his shares. On August 9, 2005, Turner filed a lawsuit in Contra Costa County Superior Court against the company and the two other shareholders, alleging that the two shareholders had made false misrepresentations to induce him to enter into the agreement. Turner refused to submit his claim to arbitration. Nevertheless, the AAA appointed three arbitrators to hear the matter. (*Turner v. Schultz, supra*, 175 Cal.App.4th at p. 977.)

On September 20, 2005, Turner filed a second lawsuit in San Francisco Superior Court, naming the company, the other two shareholders, and the AAA as defendants. He sought declaratory and injunctive relief requiring the AAA to stay the arbitration proceedings until the defendants obtained a court order compelling arbitration. The superior court denied Turner's applications for a temporary restraining order and a preliminary injunction. It sustained the AAA's demurrer without leave to amend based on arbitral immunity. (*Turner v. Schultz, supra*, 175 Cal.App.4th at p. 978.) Turner appealed. Meanwhile, in the Contra Costa action, the trial court granted the defendants' petition to compel arbitration, eliminating the basis of Turner's claims against the company and the other shareholders in the San Francisco lawsuit. The First District Court of Appeal, Division Four, dismissed Turner's appeal from the orders in the San Francisco action because the request for injunctive relief was moot, and the AAA had been properly dismissed based on arbitral immunity. (*Ibid.*)

On remand in the San Francisco action, the defendants moved for judgment on the pleadings. The superior court granted the motion and entered judgment in the defendants' favor. The defendants moved for an award of attorney fees. The trial court granted the motion. (*Turner v. Schultz, supra*, 175 Cal.App.4th at pp. 978–979.) Turner appealed again.

The First District Court of Appeal, Division Four, affirmed the award of attorney fees, stating: "The fees at issue were incurred in connection with an independent complaint for declaratory and injunctive relief. . . . [T]he only issue before the court—whether the arbitration should be allowed to proceed—was resolved in defendants' favor in this discrete legal proceeding. . . . [T]he agreement between the parties contemplates the possibility that an action on the contract may be brought in court, and the agreement provides for an award

14

of attorney fees incurred in connection with '*such action.*' . . . Under the circumstances, it appears that defendants' entitlement to attorney fees in this legal action is independent of the outcome of the arbitration of the merits of the underlying dispute, and . . . we see no reason that an award of fees may not be made now. . . . Irrespective of who becomes the prevailing party in the subsequent arbitration, there was a prevailing party for purposes of section 1717 in this discrete proceeding on the contract, and the trial court could properly award attorney fees." (*Turner v. Schultz*, *supra*, 175 Cal.App.4th at pp. 983–984.) "[*E*]*ven if Turner prevails on some or all of his claims in the course of the arbitration, and that award is confirmed in the Contra Costa action, it would not be in derogation of defendants' independent right to attorney fees in this, the San Francisco action . . . .* It was Turner who initiated both actions; he must accept the consequences of forcing defendants to fight on two fronts." (*Id.* at pp. 984–985, italics added.)

More recently, in *Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515 (*Frog Creek*), the First District Court of Appeal, Division Five, held that, under section 1717, the plaintiff and the defendant in a given lawsuit cannot both be the prevailing party in enforcing the same contract. There, Vance Brown, Inc. (Brown), and Frog Creek Partners, LLC (Frog Creek), entered into a contract obligating Brown to build a multimillion home for the individual who formed Frog Creek. There were two versions of the contract between Brown and Frog Creek; both had identical provisions requiring that disputes be submitted to binding arbitration and that the prevailing party recover attorney fees. Frog Creek filed suit against Brown, seeking damages arising out of alleged errors in the construction project. Brown filed a petition to compel arbitration in the pending lawsuit and attached two pages of the contract addressing dispute resolution. The trial court denied the petition. The Court of Appeal affirmed, concluding that the petition was based on the version of the parties' contract that Frog Creek had not signed. On remand, Brown filed a renewed petition to compel arbitration in the existing suit based on Frog Creek's version of the parties' contract. The trial court again denied the petition, but the Court of Appeal reversed and directed the trial court to stay the judicial proceedings and send the dispute to arbitration. (*Id.* at pp. 520–522.)

15

After 50 days of arbitration hearings, a panel of AAA arbitrators awarded Brown $1,905,902.90 in damages against Frog Creek, plus $2,517,687.31 in attorney fees and $666,422.78 in costs for the arbitration proceeding. (*Frog Creek*, *supra*, 206 Cal.App.4th at p. 522.) Brown filed a motion in the trial court, seeking $998,260 in prearbitration and postarbitration attorney fees and costs. The motion also requested attorney fees for Brown's unsuccessful *first* petition to compel arbitration, which was based on the wrong version of the parties' contract. Frog Creek countered with a motion for $229,510.75 in attorney fees and costs based on its successful opposition to Brown's *first* petition to compel arbitration. Both motions were premised on section 1717. The trial court determined that Brown and Frog Creek were *both* prevailing parties under the construction contract. The court found that Brown was the prevailing party in the arbitration and awarded it prearbitration attorney fees of $692,293 and postarbitration attorney fees of $96,000. It found that Frog Creek was the prevailing party on the first petition to compel arbitration and awarded it $125,000 in attorney fees. The net award to Brown was $663,293. Brown appealed. (*Frog Creek*, at p. 523.)

After reviewing the legislative history of section 1717 and the cases interpreting the statute, the Court of Appeal reversed the award of attorney fees to Frog Creek for defeating Brown's first petition to compel arbitration. The Court of Appeal instructed the trial court on remand to award attorney fees to Brown for the work performed in bringing its unsuccessful first petition. (*Frog Creek*, *supra*, 206 Cal.App.4th at pp. 525–535, 537–541, 546–548.) In reaching this conclusion, the Court of Appeal stated that when a petition to compel arbitration is granted—whether the petition is independently filed or is filed in a pending lawsuit—the trial court cannot award attorney fees at that point.

"In the *absence* of any *existing contract action*, a . . . petition [to compel arbitration] may be filed independently, in which case it commences an independent lawsuit to enforce the agreement to arbitrate. . . . 'The right to file a petition to compel arbitration rests on the agreement of the parties and upon the arbitration statutes, not on the existence of a legal action.' . . . However, where, as in the present case, there is an *existing lawsuit* involving the same underlying contractual dispute, the petition to compel arbitration *must*, under [Code of Civil Procedure] section 1292.4, be filed within the existing suit. Section 1292.4

16

provides, 'If a controversy referable to arbitration under an alleged agreement is involved in an action or proceeding pending in a superior court, a petition for an order to arbitrate shall be filed in such action or proceeding.' . . . [¶] . . .

". . . [W]hen a petition to compel arbitration filed in *an independent lawsuit* is *granted*, the court should not award attorney fees under Civil Code section 1717 to the petitioner. . . . '[I]n ordering arbitration pursuant to . . . [the California Arbitration Act (Code Civ. Proc., §§ 1280–1294.2)], the court [is] not determining the substantive rights of the parties. Because there [is] no "reckoning of the net success" of the parties, there [is] no prevailing party under the parties' agreements nor pursuant to Civil Code section 1717.' . . .

". . . [W]here . . . the petitioner succeeds on an independent petition to arbitrate, that lawsuit is not finally resolved. Under [Code of Civil Procedure] section 1292.6, the trial court retains 'a separate, limited jurisdiction over the contractual arbitration which was the subject of the . . . petition [to compel arbitration].' . . . For example, any subsequent petition to confirm the arbitration award is subject to that court's jurisdiction." (*Frog Creek*, *supra*, 206 Cal.App.4th at pp. 532–533, citations & fn. omitted, some italics added.) Section 1292.6 states: "After a petition has been filed under this title, the court in which such petition was filed retains jurisdiction to determine any subsequent petition involving the same agreement to arbitrate and the same controversy, and any such subsequent petition shall be filed in the same proceeding."

Turning its attention to the ruling on a petition to compel arbitration filed in a pending lawsuit, the Court of Appeal in *Frog Creek* explained: "[The] denial of Brown's first petition to compel arbitration did not resolve the parties' contract dispute; instead, the merits of that dispute remained before the court in Frog Creek's complaint . . . which alleged claims for breach of contract. The merits of the parties' claims under the Contract were resolved in Brown's favor by the arbitration panel following the *second* petition to compel arbitration. . . . [T]he trial court erred in awarding Frog Creek attorney fees under Civil Code section 1717 for prevailing on the first petition to compel arbitration because Brown prevailed on the contract action overall; the Legislature did not intend to authorize multiple attorney fees awards to multiple prevailing parties on *a single contract in a given lawsuit*. We reverse the trial court's award of attorney fees to Frog Creek.

17

"Brown also contends *it* is entitled to an award of attorney fees on the first petition to compel arbitration because it is the prevailing party in the contract action, even though it did not prevail on that petition. Brown is correct that a party who ultimately prevails on a contract action is entitled to all of its fees, including fees incurred during the lawsuit in proceedings where it did not prevail. . . . Therefore, Brown, as the prevailing party on the Contract, is entitled to attorney fees for the proceedings on the first petition to compel arbitration." (*Frog Creek*, *supra*, 206 Cal.App.4th at pp. 546–547, citations omitted, some italics added.) "[D]efeating a petition to compel arbitration filed in a pending contract action does not justify a grant of fees under Civil Code section 1717 where the merits of the contract claims remain pending in that action." (*Id.* at p. 535.) In short, "under Civil Code section 1717, there may only be one prevailing party entitled to attorney fees on a given contract in a given lawsuit." (*Id.* at p. 520.)

Relying on *Otay River Constructors v. San Diego Expressway*, *supra*, 158 Cal.App.4th 796, *Christensen v. Dewor Developments*, *supra*, 33 Cal.3d 778, and *Turner v. Schultz*, *supra*, 175 Cal.App.4th 974, the Court of Appeal in *Frog Creek* described as follows the exception to the general rule that attorney fees cannot be awarded when a trial court rules on a petition to compel arbitration: "[W]hen a party *defeats* an independent petition to compel arbitration, the action is terminated and the prevailing party on the petition is entitled to fees under Civil Code section 1717." (*Frog Creek*, *supra*, 206 Cal.App.4th at p. 533, italics in original; see also *Profit Concepts Management, Inc. v. Griffith* (2008) 162 Cal.App.4th 950, 952, 955–956 [where employer filed lawsuit in California alleging breach of contract claim against former employee who resided in Oklahoma, and employee successfully moved to quash service of summons for lack of personal jurisdiction, employee was entitled to attorney fees pursuant to fee provision in parties' contract because, under section 1717, he was prevailing party in action]; *PNEC Corp. v. Meyer* (2010) 190 Cal.App.4th 66, 68, 70–73 [where corporation filed breach of contract lawsuit in California against Washington State resident with whom corporation had done business, and resident successfully moved to dismiss suit on ground of forum non conveniens, resident was entitled to attorney fees in accordance with contractual fee provision because, under section 1717, resident was prevailing party in action].)

18

Which brings us to *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40 (*Kors*), where the First District Court of Appeal, Division Two, held that defendants who *prevail* on a petition to compel arbitration *filed in a pending lawsuit* are routinely entitled to attorney fees even though the plaintiff's causes of action to enforce the parties' contract have not yet been resolved by an arbitrator. (See *id.* at pp. 73–80.) The Court of Appeal reasoned: "In the present case, . . . the petition to compel arbitration under the parties' agreement was an 'action on the contract' for purposes of Civil Code section 1717. [The defendant] obtained an unqualified victory on the only contract claim at issue in the action—whether to compel arbitration under the fee agreement. Accordingly, [the defendant] was the prevailing party as a matter of law because she defeated the only contract claim before the trial court in that discrete special proceeding." (*Kors*, at p. 77.)

But *Kors* did not adequately consider the purpose of section 1717: to award attorney fees to *the* party that prevails on the contract, which is the party "who recover[s] *a greater relief in the **action** on the contract*." (§ 1717, subd. (b)(1), italics & boldface added.) And "[t]he prevailing party determination is to be made *only upon final resolution of the contract claims* and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 876, italics added.) An "action," as used in section 1717, means ""'"the entire judicial proceeding"'"" (*Westamerica Bank v. MBG Industries, Inc.*, *supra*, 158 Cal.App.4th at p. 134, italics omitted) and "does not include procedural steps [in the litigation]" (*Salawy v. Ocean Towers Housing Corp.*, *supra*, 121 Cal.App.4th at p. 673). Section 1717 reflects the Legislature's intent that a single lawsuit cannot have "multiple prevailing parties on distinct contractual claims *involving the same contract*." (*Frog Creek*, *supra*, 206 Cal.App.4th at p. 527, italics added; see *id.* at pp. 536–537 [criticizing *Kors*].)

Further, *Kors* did not recognize that a petition to compel arbitration filed in a pending lawsuit is not a "discrete proceeding." Indeed, the trial court retains jurisdiction over the case to conduct further proceedings. "The statutory scheme outlined in [the California Arbitration Act] contemplates the court's continuing involvement in the arbitration process. 'The proceeding to compel arbitration . . . is in essence a suit in equity

19

to compel specific performance of a contract.' . . . If the parties fail to agree upon an arbitrator the court 'shall,' upon petition, appoint one. . . .

"The underlying [lawsuit] is stayed once arbitration begins . . . . However, the court retains jurisdiction over the matter . . . and there are several specific instances in which that jurisdiction might be exercised. In contract [lawsuits], for example, if the parties' agreement does not grant the arbitrator general law discovery powers, the court must intervene. . . . [A] court which has ordered arbitration retains 'the power on the one hand to entertain a petition by the plaintiff for judicial assistance in moving the arbitration forward where the matter is foundering for reasons beyond plaintiffs' control, or on the other hand, to entertain a motion by defendants to dismiss the arbitration where plaintiffs have failed to exercise reasonable diligence in moving the dispute to a conclusion.' . . . Finally, if a party is dissatisfied with the award of the arbitrator, the court may correct or vacate it." (*California Teachers Assn. v. Governing Board* (1984) 161 Cal.App.3d 393, 399, citations omitted.) "Viewed as a petition to compel arbitration . . . , the order compelling the [claimant] to commence arbitration [is] *not a final determination* of the rights of the parties. . . . Therefore, the court retain[s] jurisdiction of the matter . . . and [is] empowered to award attorneys' fees and costs to the prevailing party [after the arbitration is completed]." (*Id.* at p. 400, italics added.)

*Kors* relied in part on *Acosta v. Kerrigan*, *supra*, 150 Cal.App.4th 1124. So do defendants in the present case. That reliance is misplaced. For one thing, *Acosta* made no mention of section 1717. Equally important, the conclusion in *Acosta*—the defendant was entitled to attorney fees for filing a successful petition to compel arbitration in a pending lawsuit—was based on the unique wording of the *attorney fee* provision in the parties' agreement. The *arbitration* provision in the agreement stated: "'Any dispute regarding any aspect of this . . . Agreement or an act which allegedly has or would violate any provision of this . . . Agreement . . . will be submitted to arbitration . . . as the exclusive remedy for such claim or dispute.'" (*Acosta*, at p. 1126.) The plaintiff ignored the arbitration provision and filed a lawsuit. Under the *attorney fee* provision, "'[s]hould any party to this Agreement hereafter institute any legal action or administrative proceeding against the other *by any method other than said arbitration*, the responding party *shall be entitled to*

20

*recover* from the initiating party all damages, costs, expenses, and *attorneys' fees incurred as a result of such action*." (*Ibid.*, italics added.)

The Second District Court of Appeal, Division Seven, affirmed the trial court's award of attorney fees, saying: "Here, the contractual provision at issue states a party who is forced to file a petition to compel arbitration of a dispute arising under the [parties'] Agreement may recover his attorney fees incurred in making the successful petition. [The plaintiff] states no valid reason why [the defendant] should have to wait until the end of the case to recover fees he is entitled to by virtue of prevailing on a specific motion. [*The defendant*] *is not attempting to recover attorney fees under a provision permitting an award of fees to the party prevailing on the merits of a claim arising under the . . . Agreement.* Rather, he is seeking fees incurred while enforcing an independent provision of the contract, fees to which he is entitled even if he loses the case on the merits in the arbitration." (*Acosta v. Kerrigan*, *supra*, 150 Cal.App.4th at p. 1132, italics added, fn. omitted.) Neither the contingency fee agreement here nor the parties' agreement in *Kors* contained an attorney fee clause similar to the one in *Acosta*.

Thus, we conclude the trial court erred in awarding attorney fees and costs to defendants for prevailing on the petition to compel arbitration filed in this lawsuit. Only *one* side—plaintiffs *or* their former attorneys—can prevail in enforcing the contingency fee agreement, and the determination of the prevailing parties must await the resolution of plaintiffs' causes of action by an arbitrator. Attorney fees under section 1717 can be awarded only to the parties that prevail in the "action."

21

### III

### DISPOSITION

The orders are reversed.  Plaintiffs are entitled to costs on appeal.

CERTIFIED FOR PUBLICATION.


MALLANO, P. J.

We concur:


CHANEY, J.


JOHNSON, J.