Filed 11/10/21  Albertini v. Acebo-Houlihan CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| GREGORY ALBERTINI et al., | D078454 |
| Plaintiffs, Cross-defendants and Appellants, | |
| v. | (Super. Ct. No. 37-2018-0003732-CU-NP-NC) |
| ANNE ACEBO-HOULIHAN, | |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from a postjudgment order of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith and Lann G. McIntyre, Peter L. Garchie for Plaintiffs, Cross-defendants and Appellants.

Gregory M. Garrison and Kevin T. Rhine for Defendant, Cross-complainant and Respondent.

Plaintiffs, cross-defendants and appellants Gregory Albertini and Catherine Albertini appeal from an order awarding $216,625 in attorney fees to Anne Acebo-Houlihan after the trial court declared her and Jesse Houlihan

prevailing parties on cross actions arising out of disputes over the parties' adjoining homes. The court awarded the Houlihans fees under Civil Code[1] section 5975, subdivision (c), a provision of the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act, § 4000 et seq.), on the parties' competing claims including for trespass and nuisance. In part, the court found the parties' actions were brought "to enforce . . . governing documents" (covenants, conditions and restrictions or CC&Rs) under that section and their tort claims were inextricably intertwined with the claims arising under the governing documents.

The Albertinis contend: (1) section 5975 does not provide a basis for the Houlihans' recovery of attorney fees, in part because their defense of the Albertinis' complaint was not an action to enforce the governing documents but one to determine they were unenforceable or nonexistent; (2) there is no contractual basis for an attorney fee award in the CC&Rs, which assertedly allows fees only for the initiation or bringing of an action, or for the "protection of the project"; (3) the Houlihans are judicially estopped from relying on the CC&Rs or the Davis-Stirling Act to recover their fees; and (4) the attorney fee award was excessive as a matter of law. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

We set out the background facts of the underlying litigation in our opinion on the Albertinis' appeal from the judgment on the jury verdict and bench trial on equitable issues. (*Albertini v. Acebo-Houlihan* (Nov. 4, 2021, D077391) [nonpub. opn.].) Those facts need not be repeated here, other than

---

[1]     Undesignated statutory references are to the Civil Code.

2

to say that the trial court declared the Houlihans the prevailing parties and ordered they recover costs of suit from the Albertinis.[2]

Thereafter, the Houlihans moved for an award of $235,220 in attorney fees under the Davis-Stirling Act based on 548.3 hours of attorney work. They asserted both the Albertinis' complaint and the Houlihans' cross-complaint sought relief for breach of the CC&Rs and all of the noncontract claims were founded on obligations contained in the CC&Rs. They pointed out that the CC&Rs themselves provided for attorney fees in "any other legal or equitable action that may be necessary to protect the project," and asserted all of the claims were brought to protect the project, thus they were entitled to fees on all tort and contract claims. The Houlihans argued as the prevailing parties in both actions, attorney fees were recoverable under section 5975 on every claim in the Albertinis' action and their cross-action because both parties alleged breach of the CC&Rs, their other claims were founded on rights contained in the CC&Rs, and every claim was brought for the " 'protection of the project' " as the CC&Rs' attorney fee provision provided. They argued the requested fees were reasonable for the work done by their two attorneys Gregory Garrison and Kevin Rhine (at $600 and $400 hourly rates respectively) between February 2018 and the time of the motion.

---

[2]     We note that in the factual background of both their opening brief in this appeal and the accompanying appeal, the Albertinis state they were self-represented and not permitted to present any exhibits at trial. Based on our review of the record as recounted in our prior opinion, the suggestion that the trial court refused to allow them to present exhibits given their pro per status is a significant misrepresentation of the record, which shows the Albertinis had failed to exchange exhibits with opposing counsel and the court despite the court's repeated admonishments and warnings about the consequences of not doing so. But the court nevertheless permitted the Albertinis to introduce some exhibits during the trial, making the assertion incorrect as a factual matter.

The Houlihans supported their motion with declarations from other attorneys on the prevailing hourly rate for counsel in Southern California and particularly the reasonable hourly rate for Garrison and Rhine, given their familiarity with them as well as their skill, experience and professional reputations. Garrison submitted his own declaration recounting his education and experience and that of attorney Rhine.

The Albertinis opposed the motion, arguing section 5975 did not allow the Houlihans to recover attorney fees because their tort causes of action did not seek to enforce the CC&Rs' terms and provisions. They argued the attorney fees clause in the CC&Rs did not extend to defending tort causes of action, thus the Houlihans could not recover fees under section 1717. The Albertinis argued the Houlihans were judicially estopped from asserting the validity of the CC&Rs having sought to declare them unenforceable and invalid, and having abandoned their breach of covenant cause of action before trial.[3] They argued the Houlihans' fees were excessive in both reasonable hourly rate and time billed, and also because the Houlihans had not demonstrated the requested fees were caused by the Albertinis' excessive or frivolous missteps. The Albertinis provided a declaration from counsel who averred for various reasons that an appropriate fee award to the Houlihans was between approximately $39,000 and $41,460.

---

[3] The Albertinis further argued the Houlihans could not recover attorney fees if they were not damaged by reason of an insurer paying the fees; they maintained the Houlihans' payment history suggested they had tendered their defense to an insurer who paid the law firm. The trial court found as a factual matter there was no evidence an insurer had paid the Houlihans' fees, and further ruled the Albertinis showed no legal basis for their position that a prevailing party could not recover insurer-paid fees. The Albertinis do not repeat the insurance-related arguments on appeal.

4

The trial court awarded the Houlihans attorney fees in a reduced amount. It found the action was one to "enforce the governing documents" within the meaning of section 5975 given both parties' claims alleging violations of the CC&Rs, and that the Houlihans prevailed on all claims seeking to enforce the CC&Rs. It ruled all of the causes of action, whether based on the CC&Rs or tort, involved a common nucleus of operative facts, and found that the claims arising under the CC&Rs and tort were so factually intertwined that it would be impossible to separate them. The court further found all of the parties' claims fell within the scope of the attorney fee provision in the CC&Rs, thus permitting the Houlihans to recover all reasonable fees under section 1717. It rejected the Albertinis' arguments that the Houlihans were judicially estopped from recovering fees. The court ruled that even if the Albertinis had established the elements of judicial estoppel, the doctrine was not properly applied in the case. It found $216,625 was a reasonable attorney fee award to the Houlihans, "consisting of the sum of (1) $75,000 for attorney Garrison's services (125 hours at $600 per hour); (2) $136,000 for Attorney Rhine's services (340 hours at $400 per hour); [and] (3) $5,625 for paralegal . . . services (45 hours at $125 per hour)." It ruled a reduction was warranted to account for duplication of effort and inefficiencies, including the attorneys' performance of administrative tasks.

The Albertinis filed this appeal from the court's postjudgment order.

DISCUSSION

I. *Standard of Review*

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been

5

satisfied amounts to statutory construction and a question of law." '
[Citation.] In other words, 'it is a discretionary trial court decision on the
propriety or amount of statutory attorney fees to be awarded, but a
determination of the legal basis for an attorney fee award is a question of law
to be reviewed de novo.' " (*Mountain Air Enterprises, LLC v. Sundowner
Towers, LLC* (2017) 3 Cal.5th 744, 751; see also *Kaura v. Stabilis Fund II,
LLC* (2018) 24 Cal.App.5th 420, 428 [where attorney fee issue requires the
interpretation of a statute, a question of law, the appellate court exercises de
novo review].)

The Albertinis' claims that sections 5975 or 1717 do not permit the
Houlihans' attorney fee award present just such legal questions, as the
Albertinis ask this court to interpret section 5975 or the CC&Rs' attorney fee
clause in connection with their arguments. The type or nature of the parties'
claims is undisputed. Under the above standards, we review the amount of
the fee award for abuse of discretion, which we will find only if the court's
ruling " ' "exceed[s] the bounds of reason." ' " (*Rancho Mirage Country Club
Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 260 (*Rancho
Mirage*).) We are bound by the substantial evidence rule, and " ' "[w]hen two
or more inferences can reasonably be deduced from the facts, the reviewing
court has no authority to substitute its decision for that of the trial court." ' "
(*Ibid.*, quoting *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339; *Champir,
LLC v. Fairbanks Ranch Association* (2021) 66 Cal.App.5th 583, 591.) The
court's resolution of factual disputes arising from the evidence is conclusive.
(*Champir*, at p. 593.) We presume the court's ruling is correct, with " ' " 'all
intendments and presumptions . . . indulged to support [it.]' " ' " (*Ibid.*)

6

II. *Entitlement to Attorney Fees Under Section 5975*

A. *Legal Principles*

"With regard to an award of attorney fees in litigation, California generally follows what is commonly referred to as the American Rule, which provides that each party to a lawsuit must ordinarily pay his or her own attorney fees. [Citation.] The American Rule is codified in Code of Civil Procedure section 1021, which states in relevant part: 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . .' " (*Tract 19051 Homeowners Association v. Kemp* (2015) 60 Cal.4th 1135, 1142 (*Kemp*); see also *Retzloff v. Moulton Parkway Residents' Association, No. One* (2017) 14 Cal.App.5th 742, 749.) "[T]he Legislature has established a variety of exceptions to the American Rule by enacting numerous statutes that authorize or mandate an award of attorney fees in designated circumstances." (*Kemp*, at p. 1142.)

Section 5975 of the Davis-Stirling Act is such a provision. (*Kemp*, *supra*, 60 Cal.4th at p. 1142.) The Davis-Stirling Act consolidated statutory law governing condominiums and other common interest developments. (*Rancho Mirage*, *supra*, 2 Cal.App.5th at p. 258, quoting *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81.) Its fee provision is mandatory. (*Rancho Mirage*, at p. 258.) In part, section 5975 provides: "In an action to enforce the governing documents, the prevailing party shall be

7

awarded reasonable attorney's fees and costs." (§ 5975, subd. (c).)[4] "This language has been interpreted to allow recovery of not only litigation costs, but also reasonable attorney fees and costs expended in prelitigation alternative dispute resolution (ADR) pursuant to the David-Stirling Act." (*Rancho Mirage*, at p. 258.) Section 5975 is "an independent fee-shifting statute, and a prevailing party would be entitled to its fees under this statute even without a contractual fee provision." (*Parrott v. Mooring Townhomes Assn., Inc.* (2003) 112 Cal.App.4th 873, 879.)

We look not to the form of the complaint but to the substance of the claims asserted and relief sought in determining whether an action is one "to enforce the governing documents" within the meaning of section 5975. (*Rancho Mirage, supra,* 2 Cal.App.5th at p. 260.) The type of relief sought, however, is not dispositive of the entitlement to fees under section 5975 because CC&Rs may be enforced by proceedings in equity or law. (*Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1380 [involving former section 1354].) Further, the California Supreme Court has explained that even if a plaintiff does not ultimately prove CC&Rs are in fact governing documents, a prevailing party might nevertheless be entitled to

---

4 Section 5975, subdivision (c) is former section 1354, subdivision (c). (See *Kemp, supra,* 60 Cal.4th at p. 1138.) " 'Governing documents' means the declaration and any other documents, such as bylaws, operating rules, articles of incorporation, or articles of association, which govern the operation of the common interest development or association." (§ 4150.) The CC&Rs in this case meet this definition. (See *Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 127 ["The primary governing document of the association is the declaration—the document that contains a legal description of the development and 'the restrictions on the use or enjoyment of any portion of the common interest development that are intended to be enforceable equitable servitudes,' " which "is frequently referred to as the 'covenants, conditions, and restrictions,' or the 'CC&Rs' "].)

recover attorney fees under section 5975: "When a lawsuit is brought to enforce what the complaint expressly alleges are the governing documents of a common interest development, the action would ordinarily be understood to be 'an action to enforce the governing documents [of a common interest development]' as that clause is used in [section 5975]. Whether or not the plaintiff in the action is ultimately successful in establishing that the documents relied upon are in fact the governing documents of a common interest development would not affect the character or type of action that has been brought." (*Kemp*, *supra*, 60 Cal.4th at p. 1144.)

B. *Contentions*

The Albertinis do not challenge the trial court's determination of the Houlihans' status as prevailing parties; rather, they contend section 5975 is not a basis for the Houlihans' recovery of attorney fees. Citing *Gil v. Mansano* (2004) 121 Cal.App.4th 739 and *Roberts v. Packard, Packard & Johnson* (2013) 217 Cal.App.4th 822, they maintain the statutory language "action to enforce" is "narrow and limited" and does not authorize an award where the statute is used defensively. The Albertinis argue the court erred by focusing on their complaint's allegations to conclude the entire case fell within section 5975. They further argue that fees incurred to bring the trespass and nuisance tort causes of action were not recoverable because those claims were not actions to enforce the CC&Rs. According to the Albertinis, "[n]ot a single violation of the CC&Rs was mentioned in these causes of action," which involved general allegations of duties owed in tort and were not based on enforcement of the CC&Rs. They compare this case to *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 670, stating the trespass and nuisance claims here, like the plaintiffs' claims in *Salawy*, involve access to and interference with the properties and

9

interference or harm to their respective property interests, not CC&Rs violations. The Albertinis argue that because the Houlihans took the position the properties were not governed by the Davis-Stirling Act and the CC&Rs were unenforceable, there was no basis to award attorney fees under section 5975 on their equitable and other claims.

C. *Analysis*

Under *Kemp*, *supra*, 60 Cal.4th 1135, we look to the character or type of action the Albertinis and Houlihans brought, not whether they succeeded in proving the existence or terms of the governing documents. (*Id*. at p. 1144.)

The Albertinis' complaint contained causes of action for waste, trespass, nuisance, and breach of the CC&Rs allegedly governing the properties. They prefaced their causes of action by alleging that both their property and the Houlihans' were subject to the CC&Rs, which "all owners are bound to observe for the common benefit of the community." They set out several of the recitals and provisions of the CC&Rs, including one stating that common area " 'shall be controlled by the owners in common through their membership in the Association' " and another dealing with utility connections and lines, in part granting unit owners repair and maintenance easements over portions of other persons' property on which sewer, water, gas, electrical and other utility lines were installed.

As factual background, the Albertinis alleged that the Houlihans damaged common areas, diverted or interfered with utility connections, and tampered with electrical lines and equipment "in violation of [the Albertinis'] property and personal rights, as well as the express easement and other property covenants and rights granted to the Albertinis in the [CC&Rs]." They alleged the Houlihans tapped into their Internet connections, altered their power supply, and refused to cooperate in good faith with regard to

10

maintenance repair and replacement of the common area. They alleged the Houlihans intercepted communications between the Albertinis' cell phones or between their cell phones and landlines. They alleged the Houlihans covered up security cameras the Albertinis had placed in common areas to hide work the Houlihans had performed. They alleged the Houlihans "have been observed digging and working in the common area," "performing what appears to be electrical repair work to the common electrical lines" and "having persons and or contractors install what appear to be electronic and other devices in the common area." The Albertinis alleged Acebo-Houlihan "refused to mediate the common interest development enforcement action aspect of this dispute in a timely manner and in good faith . . . ."

The Albertinis' waste, trespass and nuisance causes of action cursorily alleged that the Houlihans' conduct constituted waste, namely "damage to the common area," the Houlihans "intentionally, recklessly or negligently" entered the Albertinis' property, and the Houlihans created a nuisance: a condition that was harmful to health or a substantial interference with the Albertinis' use and enjoyment of their land and "unlawfully obstructed the free passage or use . . . of the common area . . . ." They alleged the CC&Rs required Acebo-Houlihan to allow the Albertinis access to the common areas and facilities and utility lines, precluded the Houlihans from interfering with the Albertinis' property and easement rights, and required the Houlihans to cooperate with the Albertinis with respect to maintenance, repair and replacement of the common area. The Albertinis sought injunctive relief, stating they were entitled to an "order that [the Houlihans] have breached the [CC&Rs]" and they "are required to refrain from interfering with and damaging [their] property rights, and fully and completely comply with [the

11

CC&Rs] . . . ." They sought a judicial declaration "concerning the rights and obligations of the parties with respect to the allegations raised in this action."

The Houlihans answered the Albertinis' complaint in part by asserting as an affirmative defense that the Houlihans were barred from obtaining any relief on grounds they had themselves breached the CC&Rs, excusing the Houlihans from performing any duties or obligations set out in those declarations, and also that the Albertinis had prevented the Houlihans from performing any such duties or obligations.

Acebo-Houlihan's cross-complaint against the Albertinis likewise sought damages for waste, trespass, nuisance, breach of the CC&Rs, restitution and declaratory relief. We summarized her claims in our prior opinion. (*Albertini v. Acebo-Houlihan, supra*, D077391.) We need not repeat her allegations, but point out that in response to Acebo-Houlihan's claims, the Albertinis asserted they were accessing common areas defined by the CC&Rs.

Here, the substance and gist of the Albertinis' complaint sought to enforce their rights arising from the CC&Rs, which they claimed established joint maintenance and repair obligations, as well as common areas that they were entitled to enter and on which they claimed the Houlihans committed waste. Likewise, the Albertinis' claims that the Houlihans tampered with utility lines and connections over which the CC&Rs gave them an easement arose out of and asserted rights under the CC&Rs. The jury's verdict in favor of the Houlihans and against the Albertinis on the Albertinis' complaint made the Houlihans the prevailing parties entitled to fees incurred in the defense of these causes of action. (Accord, *Chee v. Amanda Goldt Property Management, supra*, 143 Cal.App.4th at p. 1381.)

We reject the Albertinis' assertion that section 5975 should be construed so as to preclude recovery of attorney fees incurred by the Houlihans in the defense of their claims. Such a construction (involving former section 1354) was expressly rejected by the California Supreme Court in *Kemp*: "[T]he enactment of a prevailing party attorney fee provision generally reflects a legislative intent to adopt a broad, reciprocal attorney fee policy that will, as a practical and realistic matter, provide a full mutuality of remedy to plaintiffs and defendants alike." (*Kemp*, *supra*, 60 Cal.4th at p. 1145.) In *Kemp*, the court held that prevailing defendants were entitled to attorney fees in an action by a plaintiff seeking to enforce governing documents, even though the defendant had argued the association was not a common interest development because the CC&Rs had expired well before the lawsuit was filed. (*Id.* at pp. 1140-1141.) As in *Kemp*, "because [the Albertinis] clearly would have been entitled to an award under the statute had *they* prevailed in the action, denying [the Houlihans] an award under the statute when *they* were the prevailing parties would unquestionably violate the reciprocal nature of the statute and thus defeat the legislative intent underlying the statute." (*Kemp*, *supra*, 60 Cal.4th at p. 1139.)

The court in *Kemp* addressed and rejected the plaintiffs' contention that *Gil v. Mansano*, *supra*, 121 Cal.App.4th 739, relied upon by the Albertinis in this case, demonstrated defendants were not entitled to an attorney fee award " 'where . . . the statute is used defensively, and the language authorizing recovery of attorney's fees is limited to "actions to enforce" . . . .' " (*Kemp*, *supra*, 60 Cal.4th at p. 1153.) *Gil* involved a fraud action in response to which the defendant maintained the suit was barred by a release containing an attorney fee provision. (*Kemp*, at p. 1153.) A majority in *Gil* held the fee provision there (authorizing attorney fees when

13

an action was brought to enforce the agreement) did not permit a fee award when a party proffered the release as a defense to a lawsuit. (*Ibid*.) Without addressing the correctness of the majority's decision in *Gil*, the *Kemp* court concluded it did not support the plaintiffs' position where the plaintiffs had sued to enforce the declaration as a governing document, and defendants had prevailed in that action. (*Ibid*.)

Here, as in *Kemp*, the Albertinis sought to enforce the provisions of the CC&Rs by their complaint and the Houlihans prevailed in that action, likewise taking the circumstances outside the facts in *Gil v. Mansano*, *supra*, 121 Cal.App.4th 739. (*Kemp*, *supra*, 60 Cal.4th at p. 1153.) Nor does *Roberts v. Packard, Packard & Johnson*, *supra*, 217 Cal.App.4th 822 assist the Albertinis.[5] In *Roberts*, the Court of Appeal held that under section 1717, a

---

[5]     The Albertinis cite *Roberts v. Packard, Packard & Johnson*, *supra*, 217 Cal.App.4th at page 833 for the proposition that "[t]he defense of an action is not an 'action to enforce' the governing documents. It is only a response to claims setting forth reasons why the Albertinis should not prevail on *their* claims." More fully, *Roberts* said: "Procedural steps taken during pending litigation are not an 'action' within the meaning of section 1717. As explained by one Court of Appeal: 'An "action to enforce" does not refer to specific pleadings or *steps within the action* or a defense. Thus, a demurrer does not constitute "an action to enforce" a right. A demurrer is a pleading that challenges the legal sufficiency of another pleading . . . . "The function of a demurrer is to test the sufficiency of a pleading by raising questions of law." . . . A demurrer is not "prosecuted" against another . . . and therefore is not an "action to enforce." "[A] 'defense' is '[t]hat which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks[; . . . [ ] it is a] response to the claims of the other party, setting forth reasons why the claims should not be granted.' . . ." . . . That the common meaning of "action"—as in an "action to enforce"—does not include procedural steps such as a demurrer or other defenses is illustrated by the following passage in an authoritative work: "The broad definition [of action] covers the following: (1) [S]uits at law or in equity. . . . (2) Certain adversary proceedings that take place during a probate proceeding. . . . (3) Actions for declaratory relief. . . .

14

petition to compel arbitration filed in a pending lawsuit is not an action and attorney fees could not be awarded to the prevailing party until the underlying causes of action were eventually resolved. (*Id.* at p. 833.) *Roberts* is inapposite.

As stated, the Albertinis do not challenge the court's ruling that the jury's verdict in the Houlihans' favor on their cross-complaint made them prevailing parties. Comparing the Houlihans' claims to the plaintiffs' claims in *Salawy v. Ocean Towers Housing Corp.*, *supra*, 121 Cal.App.4th 664, the Albertinis maintain that the Houlihans cannot recover fees on their trespass and nuisance causes of action under section 5975 because those causes of action did not allege violations of or seek to enforce the CC&Rs, but involved tort claims for access to and interference with each party's respective properties and interference with or harm to their individual property interests.

The contention is without merit. In *Salawy*, as in *Gil*, the plaintiffs' claim was based on breach of promises (to reimburse for costs of relocation,

---

(4) Actions for divorce (dissolution of marriage). . . ." . . . There is nothing in this passage to suggest that a defensive matter raised by a demurrer is included in the term "action." ' " (*Roberts*, at pp. 832-833, quoting *Salawy v. Ocean Towers Housing Corp.*, *supra*, 121 Cal.App.4th at pp. 672-673.) Assuming arguendo the correctness of this reasoning, it is of no moment in this case, which does not involve the Houlihans' assertion of rights arising under the CC&Rs in a demurrer, or a situation where the sole assertion of rights under the CC&Rs was via an affirmative defense. Since *Roberts* and *Kemp* were decided, the California Supreme Court in *Mountain Air Enterprises v. Sundowner Towers, LLC*, *supra*, 3 Cal.5th 744 held that the assertion of an affirmative defense was not an "action" or "proceeding" as used in an attorney fee provision stating in part the prevailing party shall be entitled to recover reasonable fees incurred in "any legal action or any other proceeding . . . brought for the enforcement of this Agreement . . . ." (*Id.* at pp. 752-756.)

15

among other things), not one to enforce the governing documents. (*Salawy v. Ocean Towers Housing Corp.*, *supra*, 121 Cal.App.4th at pp. 667, 671.) The Court of Appeal majority held the defendant's demurrer, which raised the CC&Rs in defense, did not entitle it to attorney fees under former section 1354 because the action was not "an action to enforce" a right within the meaning of the statute. (*Id.* at pp. 673-674.) *Salawy* is inapposite for the same reasons that *Gil* does not control. (*Kemp*, *supra*, 60 Cal.4th at p. 1153.)

Further, contrary to the Albertinis' argument, the claims in Acebo-Houlihan's cross-complaint alleged the CC&Rs and rights under them as a basis for her trespass and nuisance claims. Though Acebo-Houlihan alleged there had never been an active homeowner's association and it was suspended by the California Franchise Tax Board, she went on to allege that CC&Rs were recorded, and "place various rights and obligations on the owners of the condominium units . . . ." She alleged those included: (a) making each owner responsible for maintenance and repair of his or her unit, including plumbing, electrical and heating systems serving only his or her unit; (b) prohibiting "noxious or offensive activities . . . on or within the development" that "may become an annoyance or nuisance to the residents of the association or that in any way interferes with the quiet enjoyment of occupants of the condominiums"; (c) making owners liable for damage they cause to common areas or improvements thereon; (d) precluding parking of vehicles or campers on common areas except for less than 24 hours in guest parking; (e) entitling each owner to sue another owner who violates the CC&Rs for damages; and (f) giving owners who share common utility lines "full use and enjoyment of the related utility connection." Acebo-Houlihan alleged the CC&Rs provided that "[e]very violation of the CC&Rs is declared to be a nuisance . . . ." Acebo-Houlihan's nuisance cause of action expressly

16

alleged that the Albertinis created a nuisance condition on property "jointly owned by the Acebo Unit and the Albertini Unit" and "commonly owned by the Acebo Property and the Albertini Property" entitling Acebo-Houlihan to damages and an injunction. The Albertinis do not summarize the trial evidence, but Acebo-Houlihan's testimony, recounted in our prior opinion, concerned the Albertinis' interference with her water lines and electrical panel, as well as their conduct in, among other things, capping off of her sprinklers, accessing utilities that service her unit to use water for their own washing machine, and parking on her property or blocking access to her property by their vehicles. All of these actions implicate rights under the CC&Rs recounted above.

Even if the substance or gist of the nuisance and trespass claims were not to enforce rights under the CC&Rs, the Albertinis do not challenge the trial court's finding that the tort claims were "so factually intertwined" with other claims arising under the governing documents "that it would be impossible to separate them" for purposes of awarding fees. We review the court's refusal to apportion the fees incurred on tort causes of action for abuse of discretion. (See *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1177.) It is established that " '[a]ttorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories.' " (*Graciano v. Robinson Ford Sale, Inc.* (2006) 144 Cal.App.4th 140, 159; see *Erickson v. R.E.M. Concepts, Inc.* (2005) 126 Cal.App.4th 1073, 1083 [" 'Apportionment of a fee award between fees incurred on a contract cause of action and those incurred on other causes of action is within the trial court's discretion' "].) Such discretion is abused only when the court's ruling is "clearly wrong" or exceeds the bounds of reason considering all circumstances

17

before it.  (*Reynolds v. Ford Motor Company* (2020) 47 Cal.App.5th 1105, 1117; *Santana v. FCS US, LLC* (2020) 56 Cal.App.5th 334, 348-349; see also *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957 ["Judicial discretion 'implies absence of arbitrary determination, capricious disposition or whimsical thinking' " and " 'imports the exercise of discriminating judgment within the bounds of reason' "].)  The Albertinis have not met their burden to show any such abuse of discretion here. (*Starcevic v. Pentech Financial Services, Inc.* (2021) 66 Cal.App.5th 365, 374 [burden is on the appellant to affirmatively show error].)

That the Houlihans asserted in connection with their equitable claims the unenforceability of the CC&Rs does not change the character of their action as one to enforce the CC&Rs.  We see no reason why the circumstances here are any different than a plaintiff who fails to establish the viability of the governing documents.  (See *Kemp*, *supra*, 60 Cal.4th at p. 1144 ["Whether or not the plaintiff in the action is ultimately successful in establishing that the documents relied upon are in fact the governing documents of a common interest development would not affect the character or type of action that has been brought"].)

### III.  *Entitlement to Attorney Fees Under Section 1717*

The CC&Rs contain an attorney fee clause that provides in part:  "The owners or any one of them . . . shall be entitled to bring legal action for damages against any condominium owner who shall default in the performance of any of the provisions hereof, the bylaws or rules and regulations adopted by the Board for the protection of the project, including but not limited to, the covenant to pay assessment charges.  Further, said persons shall be entitled to enjoin any violation of said documents, rules, and regulations and shall be entitled to prosecute any other legal or equitable

18

action that may be necessary to protect the project. If any owner, member of the Board, or the Board shall deem it necessary to initiate any legal or equitable action against any owner for the protection of the project, then said persons shall be entitled to reasonable attorney's fees and costs of said action from said owner for expenses incurred in bringing or initiating the action . . . ."

"In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).) "The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610.) Thus, if a contract gives one party the right to attorney's fees, but not to the other party, "the effect of section 1717 is to allow recovery of attorney fees by whichever contracting party prevails, 'whether he or she is the party specified in the contract or not' . . . ." (*Id.* at p. 611.) And, "[i]t is now settled that a party is entitled to attorney fees under section 1717 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.'" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870.)

"The phrase 'action on a contract' includes not only a traditional action for damages for breach of a contract containing an attorney fees clause [citation], but also any other action that 'involves' a contract under which one of the parties would be entitled to recover attorney fees if it prevails in the

19

action [citation]. 'In determining whether an action is "on the contract" under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action.' " (*Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 426.) Thus, an action on a contract can include an action seeking declaratory and injunctive relief to avoid enforcement of a contractual clause (*ibid*); the action need only involve an agreement " 'in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement and . . . the agreement contains an attorney fees clause.' " (*Id.* at p. 427.)

The Albertinis contend the attorney fee provision in the CC&Rs quoted above does not support an award of attorney fees for the Houlihans. They repeat their argument that the Houlihans' defense of their claims does not meet the contractual definition of an "action to enforce." They further argue Acebo-Houlihan did not demonstrate her cross-complaint "was for the protection of the project" within the meaning of the CC&Rs attorney fee provision.

Having concluded the Houlihans were entitled to attorney fees under section 5975, we need not reach the contentions relating to section 1717. (*Parrott v. Mooring Townhomes Assn., Inc.* (2003) 112 Cal.App.4th 873, 879 [because section 5975 is an "independent fee-shifting statute . . . a prevailing party would be entitled to its fees under this statute even without a contractual fee provision"].) But we would reject the contentions on the merits in any event. The Houlihans were the prevailing party on the Albertinis' complaint seeking to enforce the CC&Rs, and we conclude the allegations of both the Albertinis' complaint and Acebo-Houlihan's cross-

20

complaint, including her tort claims for trespass and negligence premised in part on the Albertinis' conduct in tampering with utilities, landscaping and sprinklers and other parts of the property delineated as common areas in the CC&Rs, constituted actions to protect the project.[6] Acebo-Houlihan's request for injunctive relief to prevent the Albertinis from engaging in their misconduct likewise was for the project's protection.

Our conclusion does not change in view of Acebo-Houlihan's position that the CC&Rs were unenforceable. "[I]t is difficult to think of an action that is more likely to be characterized as an 'action on a contract' than one in which the party bringing the action explicitly seeks to have the subject contract declared void and invalid in its entirety." (*Eden Township Healthcare Dist. v. Eden Medical Center, supra*, 220 Cal.App.4th at p. 427 [healthcare district's cross-complaint to declare agreements void and invalid in their entirety was "on a contract"].) To the extent Acebo-Houlihan sought to have the CC&Rs declared invalid, her cross-complaint was "on a contract" within the meaning of section 1717.

## IV. *Claim of Judicial Estoppel*

The Albertinis contend the Houlihans are not entitled to an award of attorney fees and their motion should have been denied based on the doctrine of judicial estoppel. They assert the doctrine precludes the Houlihans from

---

6      The Albertinis do not engage in any construction of the phrase "protection of the project" and the record contains no extrinsic evidence relevant to its meaning. We apply commonsense meaning to the phrase. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC, supra*, 3 Cal.5th at p. 752; *Chee v. Amanda Goldt Property Management, supra*, 143 Cal.App.4th at p. 1377 [same rules of contract interpretation apply to CC&Rs]; *R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1025 [in the absence of extrinsic evidence, contract interpretation is de novo].)

seeking fees under section 5975 or the CC&Rs where Acebo-Houlihan took the position during trial that the Davis-Stirling Act was inapplicable and the CC&Rs unenforceable. They maintain the trial court abused its discretion in ruling otherwise; that the court incorrectly found Acebo-Houlihan had taken alternative positions, and that finding influenced its conclusion that the elements of judicial estoppel were not shown.

Judicial estoppel "prohibits a party from asserting a position in a legal proceeding that is contrary to a position he or she successfully asserted in the same or some earlier proceeding. [Citation.] 'The elements of judicial estoppel are "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' [Citation.] [¶] 'The determination of whether judicial estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently.' [Citation.] However, '[e]ven if the necessary elements of judicial estoppel are satisfied, the trial court still has discretion to not apply the doctrine.' " (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 357-358.)

" ' " ' "The policies underlying preclusion of inconsistent positions are 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings.' " [Citation.] Judicial estoppel is "intended to protect against a litigant playing 'fast and loose with the courts.' " [Citation.] Because it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion . . . . Judicial estoppel is most commonly applied to bar a party from making

22

a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one.' " ' " (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1245.)

It is not necessary for us to review each element of judicial estoppel. We see nothing warranting application of judicial estoppel to the Houlihans' arguments in their attorney fee motion, particularly where the Albertinis would most certainly have sought attorney fees under the CC&Rs had they prevailed in their action to enforce those declarations. The Houlihans had a valid legal basis to argue they were entitled to attorney fees under the CC&Rs because they prevailed on the Albertinis' claims seeking to enforce them. And, because the gist of the Houlihans' own cross-complaint sought to enforce the CC&Rs and their trespass and nuisance claims were grounded in right within those declarations, it was not inconsistent for the Houlihans to assert the CC&Rs as a basis for an attorney fee award. The trial court did not abuse its discretion in declining to apply the doctrine.

## V. *Amount of Award*

The Albertinis contend that even assuming the trial court properly awarded attorney fees, the amount awarded is excessive as a matter of law. The Albertinis repeat their unsuccessful claims that the Houlihans are not entitled to fees at all under either sections 5975 or 1717 for their trespass and nuisance tort causes of action. They then argue: "The Albertinis' expert offered a reasonable basis for apportioning these fees to exclude fees incurred in relation to the non-economic damages related solely to the tort causes of action (30 [percent] of the judgment, leaving 70 [percent] of the attorney fees award attributable to the economic damages and equitable issues, of which only 50 [percent] should be awarded because only the equitable issues could

23

potentially give rise to a right to attorney fees if construed as being for enforcement of the CC&R terms)."

We will not revisit the first argument, and the latter argument gives us no reason to hold that the court abused its discretion in setting the amount of attorney fees. "Once the trial court determined [the Houlihans] to be the prevailing party in the action, it had no discretion to deny attorney fees." (*Rancho Mirage, supra,* 2 Cal.App.5th at p. 263.) As we have stated above, "[t]he magnitude of what constitutes a reasonable award of attorney fees is . . . a matter committed to the discretion of the trial court. [Citation.] . . . [I]n reviewing for abuse of discretion, we examine whether the trial court exceeded the bounds of reason. [Citation.] In so doing, we presume the 'trial court impliedly found "every fact necessary to support its order." ' " (*Ibid.*)

The question is not whether the Albertinis presented a basis for the court to award a lesser amount of attorney fees, but whether the court had a reasonable basis for the award it made, which it reached by eliminating duplicative effort and inefficiencies. The Albertinis' arguments do not address that question, much less explain with reasoned argument or authority why their proposed apportionment (awarding about 35 percent of the requested fees by excluding fees related to economic and noneconomic damages and awarding only fees relating to equitable issues) was the only result the court could reasonably reach. The sole authority cited by the Albertinis is *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972 for the proposition that prevailing parties may only recover attorney fees on causes of action for which attorney fees are provided by statute, and not on causes of action for which attorney fees are not permitted. (*Id.* at p. 1011.) This does not address the reasonableness of the amount of fees awarded by addressing the documentation provided by the Houlihans to

24

support the hourly rate, its reasonableness, and the hours their counsel worked. (See *Cruz v. Fusion Buffet, Inc.* (2020) 57 Cal.App.5th 221, 237 [amount of fees is often computed by lodestar method, by multiplying number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work].) It is within the trial court's province and expertise to assess the reasonableness of the attorney fees requested. (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 781.) And " '[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.' " (*Rancho Mirage*, *supra*, 2 Cal.App.5th at pp. 263-264, quoting *Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 293; *Cruz*, at pp. 237-238.) "Furthermore, '[a]n award for attorney fees may be made in some instances solely on the basis of the experience and knowledge of the trial judge without the need to consider any evidence.' " (*Rancho Mirage*, at p. 264, quoting *Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227.)

In sum, the Albertinis have not established that the amount of fees awarded is unreasonable, and thus have not demonstrated a manifest abuse of discretion in the court's award.

## DISPOSITION

The postjudgment order is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.