[No. B166186. Second Dist., Div. Five. Aug. 12, 2004.]

ADEL SALAWY, Plaintiff and Appellant, v.
OCEAN TOWERS HOUSING CORPORATION, Defendant and
Respondent.

[No. B166739. Second Dist., Div. Five. Aug. 12, 2004.]

PAUL GERSTLEY, Plaintiff and Appellant, v.
OCEAN TOWERS HOUSING CORPORATION, Defendant and
Respondent.

**COUNSEL**

David Romley for Plaintiffs and Appellants.

Tyre Kamins Katz & Granof and Edmund S. Schaffer for Defendant and Respondent.

**OPINION**

**MOSK, J.—** ██ Plaintiffs and appellants Adel Salawy and Paul Gerstley (appellants) appeal from the trial court's orders awarding defendant and

respondent Ocean Towers Housing Corporation (respondent) a total of $30,000 in attorney fees ($15,000 against each of the appellants) pursuant to Civil Code[1] section 1354, subdivision (f), which provides for reasonable attorney fees for the prevailing party in an action to enforce the governing documents of a common interest development. Because the claims here were not such actions, we reverse the attorney fees awards. We hold that a defendant's successful invocation of the governing documents as a defense does not entitle it to attorney fees if the claim was not brought to enforce those documents.

## BACKGROUND

Appellants were residents and shareholders in respondent, a 317-unit apartment cooperative in Santa Monica. Because the apartment building was significantly damaged by the 1994 Northridge earthquake, respondent's shareholders undertook to renovate and repair the building.

In December 2001, appellants each filed separate but identical complaints against respondent. In their complaints, appellants alleged that they were shareholders of respondent and holders of proprietary leases in the apartment cooperative operated by respondent as a common interest development within the meaning of section 1351, subdivision (c). Appellants contended that respondent notified them in 1997 that all residents must vacate their units for approximately one year while repairs and renovations occurred; respondent would pay for packing and relocation expenses; insurance would cover homeowners' dues and mortgage payments during the absence of the residents; and units would be repaired and renovated using materials and workmanship of the same quality as that which existed before the earthquake. Appellants alleged that they relied on respondent's statements in vacating their units; that their expenses were never reimbursed; and that they incurred damages exceeding $100,000. Appellants alleged that the promises were enforceable. Appellants did not allege that they were seeking to enforce the terms of their proprietary leases or the bylaws or other governing documents of respondent.

Respondent demurred to the complaints on the ground that appellants had not relied upon any promise but had merely done what was required of all shareholders during reconstruction of the building: namely, move out. Respondent also argued that the terms of respondent's governing documents, which were binding on all shareholders, vested respondent's board of direc-

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

tors with responsibility for renovation and repairs, and limited appellants' remedies in the event of a dispute concerning the board's maintenance and repair of the building.

Respondent specifically relied on the following provisions of its bylaws concerning earthquake damage: [¶] "13.01 <u>Partial Destruction</u>. In the event that Ocean Towers is partially damaged or destroyed as a result of fire, earthquake, flood or other hazard and such damage is of such magnitude that it may reasonably be repaired or restored within one hundred twenty (120) days after the occurrence of such damage or such damage is confined to not more than ten percent (10%) of the Apartments or such damage does not substantially interfere with the use and occupancy of at least ten percent (10%) of the Apartments, then the Board shall cause such damage to be rebuilt and repaired and the cost thereof, net of any insurance proceeds, shall be assessed against all Shareholders pro rata in the ratio set forth in Section 10.06; provided, however, in the case of the destruction of improvements which exceed the building standard, the Board shall only be obligated to rebuild and repair such damage to the building standard. [¶] 13.02 <u>Major Damage or Destruction.</u> In the event of damage or destruction to the building which exceeds that set forth in 13.01 but where the cost of restoration is less than sixty percent (60%) of the fair market value of Ocean Towers (exclusive of value attributable to the land) prior to such damage or destruction, then the decision as to the restoration of the building shall be placed before the Shareholders at a meeting to be called by the Board within thirty (30) days after the occurrence of such destruction. If holders of a majority of the Shares concur, then the building shall be restored and the cost of such restoration, net of insurance proceeds, shall be assessed against all Shareholders pro rata . . . ." Respondent also relied on provisions of appellants' proprietary leases that empowered respondent and its board with discretion concerning maintenance of the cooperative housing project; limited tenants' remedies to their rights as shareholders under respondent's articles and bylaws; and provided that no abatement of rent or other compensation be accorded tenants in connection with repairs or improvements to the project.[2]

On February 4, 2002, appellants filed first amended complaints that were identical in all material respects to the original complaints, except that they alleged promissory estoppel as the basis for seeking to enforce the promises. The trial court sustained respondent's demurrers to the amended complaints but granted appellants leave to amend within 10 days. The record does not

---

[2] Respondent requested that the trial court take judicial notice of the relevant provisions of respondent's bylaws and other governing documents. The record does not show that the trial court granted respondent's request.

contain the trial court's written ruling or order, nor does it show the ground for the trial court's ruling sustaining the demurrers. Appellants did not amend their respective amended complaints but instead sought to dismiss them without prejudice after the 10-day period had expired. Respondent moved for dismissal of appellants' actions with prejudice and for entry of judgment, which motions the trial court granted. The judgments were entered on October 22, 2002.

Respondent filed motions for attorney fees pursuant to sections 1717 and 1354, subdivision (f). The trial court awarded respondent $15,000 in attorney fees pursuant to section 1354, subdivision (f) in each of appellants' actions. Appellants appealed the attorney fees awards, and the two appeals were consolidated.

## DISCUSSION

A. *Standard of Review*

An order granting or denying an award of attorney fees is generally reviewed under an abuse of discretion standard of review; however, the " 'determination of whether the criteria for an award of attorney fees and costs have been met is a question of law.' " (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169 [121 Cal.Rptr.2d 79], quoting *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 621 [98 Cal.Rptr.2d 388].) Respondent's entitlement to attorney fees under section 1354, subdivision (f) is a question of law requiring a de novo standard of review.

B. *Attorney Fees Under* Section 1354, Subdivision (f)

Section 1354 is part of the Davis-Stirling Act, which governs common interest developments in California. (§ 1350 et seq.) Subdivision (f) of section 1354 provides: "In any action specified in subdivision (a) to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs. . . ." (§ 1354, subd. (f).) Subdivision (a) of section 1354 states that the covenants and restrictions set forth in an association's governing documents are binding upon and enforceable by the association and all owners of separate interests: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or

by both." (§ 1354, subd. (a).) "Governing documents" are defined in section 1351, subdivision (j) as "the declaration and any other documents, such as by-laws, operating rules of the association, articles of incorporation, or articles of association, which govern the operation of the common interest development or association." (§ 1351, subd. (j).)

## C. *Trial Court's Rulings*

Although the record contains no statement by the trial court of its reason for sustaining the demurrers, the trial court expressly awarded attorney fees under section 1354, subdivision (f). Thus, we may infer that its orders sustaining the demurrers were based on respondent's governing documents.

The leases between appellants and respondent provided: "In the event of any action between the parties hereto seeking enforcement of any of the terms and conditions of this Lease, the prevailing party in such action shall be awarded, in addition to damages, injunctive and other relief, its reasonable costs and expenses, not limited to costs and reasonable attorney fees." We may also infer that by not awarding fees under section 1717, which provides for attorney fees pursuant to a contract, the trial court did not determine that there had been an "action" "seeking enforcement" of the lease. As this appeal only involves the application of section 1354, subdivision (f), we do not decide whether the leases and the attorney fees clauses in the leases may be applicable. We deal here only with a statute and not with a contract.

## D. *Inapplicability of Section 1354, Subdivision (f)*

■ Section 1354, subdivision (f) expressly limits the award of attorney fees to the prevailing party in an "action . . . to enforce the governing documents." Appellants' actions were not to "enforce" respondent's "governing documents" because the complaints and the amended complaints contained no claim based on a right or remedy under the governing documents. Instead, the claims were to enforce promises unrelated to the governing documents. Demurrers or other defenses asserting the governing documents do not constitute "action[s] . . . to enforce the governing documents."

■ Respondent argues that if a plaintiff attempts to frame an action as not enforcing the "governing documents," but is in reality asserting a claim under the governing documents, a defendant who, in effect, enforces those documents by defeating the claim on the basis of the governing documents, may be deprived of attorney fees under section 1354, subdivision (f). Re-

spondent is correct that plaintiff cannot avoid the attorney fees provisions if the essence of the claim falls within the enforcement of the governing documents.

Thus, in *Kaplan v. Fairway Oaks Homeowners Assn.* (2002) 98 Cal.App.4th 715 [120 Cal.Rptr.2d 158] (*Kaplan*), the court affirmed an attorney fees award to a prevailing defendant pursuant to section 1354, subdivision (f), even though the amended complaint in that case did not purport to enforce the common interest development's governing documents. The plaintiffs in *Kaplan* sought to enforce their proxy and cumulative voting rights to elect association board members by initially filing a complaint alleging violations of both the association's bylaws and the Corporations Code. When the association demurred on the ground that the plaintiffs had failed to pursue alternative dispute resolution as required by section 1354, subdivision (b), the plaintiffs amended their complaint to allege a breach of Corporations Code section 7616 as the sole cause of action. They specifically alleged that the articles and bylaws of the association provided for the right of the members to vote by proxy and attached those documents to the pleading. After the association prevailed at trial, the trial court granted the association's motion for attorney fees under section 1354, subdivision (f). The plaintiffs challenged the award on the ground that the sole theory of their amended complaint was a breach of the Corporations Code and that the action was not one "to enforce the governing documents" as required by section 1354, subdivision (f). The court of appeal affirmed the attorney fees award under section 1354, subdivision (f), reasoning that "[t]he gist of the action, as revealed by the record, was to enforce the members' proxy and cumulative voting rights under the bylaws. . . . [¶] . . . [¶] It was an adversarial action to enforce the governing documents and was designed to protect the members from allegedly improper action by the Association and preserve their rights to cumulative and proxy voting." (*Kaplan, supra,* 98 Cal.App.4th at pp. 720–721.) The court said that the bylaws are part of the governing documents.

Here, however, the "gist" of appellants' actions was not to enforce the governing documents. The actions, even if not meritorious, were based on an alleged promise unrelated to the governing documents. Although respondent's demurrer invoked the governing documents in order to defeat appellants' claims, section 1354, subdivision (f) does not authorize an award of attorney fees in this case. (Cf. *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698 [75 Cal.Rptr.2d 376] [prevailing on tort claim does not result in award of attorney fees under a contract providing for such fees in an action to enforce a contract].)

In *Palmer v. Agee* (1978) 87 Cal.App.3d 377 [150 Cal.Rptr. 841], a tenant who successfully asserted section 789.5 as a defense in an unlawful

detainer action was awarded statutory attorney fees under former section 789.12,[3] which provided for the award for attorney fees to the prevailing party in an "action arising out of Sections 789.5 to 789.22." In that case the court granted the tenant's motion for judgment on the pleadings on the ground that the landlord had not complied with a 60-day written notice of termination requirement imposed by former section 789.5.[4] The court concluded that the action did "arise" out of Civil Code section 789.5, even though the tenant invoked the statute defensively. *Palmer v. Agee, supra,* 87 Cal.App.3d 377, is distinguishable from the instant case because the statutory language authorizing attorney fees in that case was broader than the language in the instant case. The statute in that case authorized an attorney fees award in an "action arising out of" the applicable statute. Here, the applicable statute provides for attorney fees to the prevailing party in "an action . . . to enforce the governing documents." (§ 1354, subd. (f).) Even if a defensive contention arises out of the statute,[5] it does not constitute "an action to enforce" the governing documents.

■ The common understanding of an "action to enforce" is that it is a proceeding initiated by the filing of a claim. Thus, an action not only encompasses the complaint "but refers to the entire judicial proceeding at least through judgment and is generally considered synonymous with 'suit.' " (*Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 [263 Cal.Rptr. 195]; see *Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 712, fn. 15.) Section 22 of the Code of Civil Procedure defines an "action" as follows: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Section 30 of the Code of Civil Procedure provides: "A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong."

■ An "action to enforce" does not refer to specific pleadings or steps within the action or a defense. Thus, a demurrer does not constitute "an action to enforce" a right. A demurrer is a pleading that challenges the legal sufficiency of another pleading. (*People v. Hale* (1965) 232 Cal.App.2d 112, 120 [42 Cal.Rptr. 533].) "The function of a demurrer is to test the sufficiency of a pleading by raising questions of law." (*Salimi v. State Comp. Ins. Fund*

---

[3] Former section 789.12, in effect at the time of *Palmer v. Agee, supra,* 87 Cal.App.3d 377, provided in relevant part: "In any action arising out of Sections 789.5 to 789.11, inclusive, the prevailing party shall be entitled to reasonable attorney's fees and costs." The statute was subsequently amended and is now codified at section 798.85.

[4] Now section 798.56a.

[5] We do not have to reach the question as to whether we agree with the court in *Palmer v. Agee, supra,* 87 Cal.App.3d at page 387, that defensive matters constitute an "action arising out of" a statute for purposes of attorney fees.

(1997) 54 Cal.App.4th 216, 219 [62 Cal.Rptr.2d 640]; see *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420 [13 Cal.Rptr.3d 766].) A demurrer is not "prosecuted" against another (Code Civ. Proc., §§ 22, 30) and therefore is not an "action to enforce." "[A] 'defense' is '[t]hat which is offered and alleged by the party *proceeded against in an action or suit,* as a reason in law or fact why the plaintiff should not recover or establish what he seeks[; . . . [¶] it is a] *response to the claims* of the other party, setting forth reasons why the claims should not be granted.' [Citation.]" (*Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal.App.4th at p. 712, fn. 15.) That the common meaning of "action"—as in an "action to enforce"—does not include procedural steps such as a demurrer or other defenses is illustrated by the following passage in an authoritative work: "The broad definition [of action] covers the following: (1) suits at law or in equity. [Citation.] (2) Certain adversary proceedings that take place during a probate proceeding. [Citation.] (3) Actions for declaratory relief. [Citations.] (4) Actions for divorce (dissolution of marriage). [Citation.]" (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 11, pp. 64–65.) There is nothing in this passage to suggest that a defensive matter raised by a demurrer is included in the term "action."[6]

As the court said in *Exxess Electronixx v. Heger Realty Corp., supra,* 64 Cal. App.4th at page 712, 75 Cal.Rptr.2d 376, which involved a lease provision, "[u]nder any reasonable interpretation of the attorneys' fee provision, we cannot equate raising a 'defense' with bringing an 'action' or 'proceeding.' By asserting a defense to the cross-complaint, Heger Realty did not bring an action or proceeding to enforce the lease or declare rights under it." Similarly, here the defense of the governing documents by way of demurrer was not an "action . . . to enforce the governing documents." Moreover, respondent's position that a demurrer is an "action," if carried to its logical conclusion, would have the anomalous consequence that if respondent's demurrers had been overruled, respondent would be responsible for appellants' attorney fees. Treating

---

[6] See Mellinkoff's Dictionary of American Usage (1992) page 9 ("Action" is defined as "1. a lawsuit. In this sense, *action* is interchangeable with *case, lawsuit,* and *suit* and has no more technicality than any of them. . . . [¶] 2. a right to sue. In this sense, *action* is also called a **cause of action**"); Black's Law Dictionary (8th ed. 2004), page 31, column 1 ("A civil or criminal judicial proceeding"); 1 Estee, Estee's Pleadings, Practice and Forms (3d ed. 1885), section 3, page 1 ("An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. But in some sense this definition is equally applicable to special proceedings. More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree. The action is said to terminate at judgment"), quoted in Black's Law Dictionary, *supra,* page 31, column 1; see also Uniform Commercial Code, section 1201 (" 'Action,' in the sense of a judicial proceeding, includes recoupment, counterclaim, setoff, suit in equity, and any other proceedings in which rights are determined").

a demurrer as an "action" could have unforeseen consequences in other areas involving the established use of the word "action."

■ Respondent suggests that a claim not based on the governing documents is likely to be more far-fetched, and thus it would be anomalous that the more dubious a claim the less likely attorney fees can be awarded against the party making such a claim. But the language of the statute awarding attorney fees determines whether or not a successful defense will result in an attorney fees award. Section 1354, subdivision (f) authorizes an attorney fees award only in "an action . . . to enforce the governing documents." (§ 1354, subd. (f).) The statute could have been written to provide for attorney fees to the prevailing party in any action "arising out of or related to" the governing documents or in which they are enforced. But it did not. ■ A court is not free to give the words of a statute a definition "different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) The court's role is to ascertain the meaning of the words used, " 'not to insert what has been omitted' " or otherwise rewrite the law to conform to an intention that has not been expressed. (*Ibid.*)[7]

## DISPOSITION

The trial court's awards of attorney fees in both cases are reversed. We remand the matter to the trial court to determine whether or not attorney fees should be awarded pursuant to the attorney fees provisions in appellants' leases and section 1717. Appellants shall recover their costs on appeal.

Grignon, Acting P. J., concurred.

**ARMSTRONG, J.**—I respectfully dissent.

This case raises one issue, whether this was a lawsuit brought to enforce the governing documents. Relevant precedent, *Kaplan v. Fairway Oaks Homeowners Association* (2002) 98 Cal.App.4th 715 [120 Cal.Rptr.2d 158], and a commonsense examination of the record reveal that the trial court was right, it was such a lawsuit. I thus disagree with the majority's holding on that issue.

I also disagree with the majority's view on, to quote the opening paragraph, whether a "defendant's successful invocation of the governing documents"

---

[7] Because we conclude that the attorney fees awards under section 1354, subdivision (f) were improper, we do not address appellants' contention that the amount of fees awarded was excessive.

would entitle it to fees under Civil Code section 1354, subdivision (f). Here, I say "view," not holding, because the theory is not raised in this appeal and the discussion is dicta. The discussion is unnecessary, and, being dicta, has dicta's common problems. It is difficult to understand and has the potential to be applied to situations the majority may not have contemplated.

I begin with *Kaplan*, which the majority cites, then ignores. In that case, the complaint alleged a violation of the Corporations Code relating to proxy and voting rights, but after an examination of what the case was actually about, the Court found that the "gist" of the action was to enforce the homeowners' voting rights under the governing documents. (*Kaplan v. Fairway Oaks Homeowners Association, supra*, 98 Cal.App.4th at p. 720; see also *Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379, 1388, fn. 2 [49 Cal.Rptr.2d 166] [gravamen of an action labeled "continuing nuisance" was enforcement of the covenants, conditions and restrictions (CC&R's)].)

Here, although the cause of action came with a promissory estoppel label, appellants' theory was actually based on Ocean Towers Housing Corporation's alleged violation of its duty to repair appellants' earthquake-damaged apartments and to restore those apartments to their original condition, a duty imposed by the governing documents. The gist and gravamen of the complaint was a violation of the governing documents. That, not the label, controls.

"How the party achieves the goal of enforcing the right in question is not determinative of the right to an award of attorney fees. . . . The impact of the litigation is." (*In re Head* (1986) 42 Cal.3d 223, 228–229 [228 Cal.Rptr. 184, 721 P.2d 65] [Code Civ. Proc., § 1021.5, fees available to prevailing party in habeas corpus proceedings].)

"Gist" and "gravamen" are shorthand for the California primary rights theory, "under which the invasion of one primary right gives rise to a single cause of action." (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) " '[T]he "cause of action" is based on the harm suffered, as opposed to the particular theory asserted by the litigant. . . . Even where there are multiple legal theories upon which recovery might be predicated, *one injury* gives rise to only one claim for relief.' " (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 [21 Cal.Rptr.2d 691, 855 P.2d 1263], quoting *Slater v. Blackwood, supra*, 15 Cal.3d at p. 795.) "[T]he nature of a cause of action does not depend on the label the plaintiff gives it or the relief the plaintiff seeks but on the primary right involved." (*Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419, 427 [130 Cal.Rptr.2d 782].) The caption of the complaint or the particular theory adopted by the pleader is immaterial.

It is clear from the allegations in this complaint that the primary right appellants actually sought to enforce was their right to have the damage to their apartments repaired and the apartments restored to their original condition, in accord with the governing documents. Under the guise of "promissory estoppel," appellants sought precisely the relief available to them under the governing documents. Any judgment awarded under the promissory estoppel theory would result in the enforcement of those documents.

I now turn to the discussion of *Palmer v. Agee* (1978) 87 Cal.App.3d 377 [150 Cal.Rptr. 841] and its progeny. (I would also discuss *Exxess Electronixx v. Heger Realty Corporation* (1998) 64 Cal.App.4th 698 [75 Cal.Rptr.2d 376], but it is a Civil Code section 1717 case, in which the issue was whether tort causes of action were brought to enforce a contract. The issue is not an unusual one, but it has nothing to do with this case, or this discussion.)

In *Palmer*, the plaintiff was the owner of a mobilehome park, and landlord to defendant tenants. He initiated eviction proceedings under standard landlord-tenant procedures. The tenants moved for judgment on the pleadings on the ground that the landlord had failed to comply with the eviction procedures specified in the Mobilehome Residency Law. The trial court granted the motion and awarded fees to the tenants under a section of that law which provided for fees to the prevailing party "in any action arising out of" that law's eviction provisions. The Court of Appeal affirmed. After making some commonsense observations about the kind of game-playing landlords would engage in if the ruling was otherwise, the court held that "An action is not limited to the complaint or the document initiating the action but the entire judicial proceeding." (*Palmer v. Agee, supra,* 87 Cal.App.3d at p. 387.)

Other courts have concurred in this analysis: *Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 [263 Cal.Rptr. 195], considering the meaning of "action" for purposes of Code of Civil Procedure section 583.110 cited *Palmer*'s holding, and *Sunkyong Trading (H.K.) Ltd. v. Superior Court* (1992) 9 Cal.App.4th 282, 288–289 [11 Cal.Rptr.2d 504], which considered "action" under Code of Civil Procedure section 170.6, cited *Nassif* for the proposition for which *Nassif* cited *Palmer*.

"Generally an action is defined as a proceeding wherein one asserts a right or seeks redress for a wrong. ([Code Civ. Proc.] § 22.) An action is usually deemed to commence upon the filing of a complaint ([Code Civ. Proc.] §§ 350 & 411.10) and remains pending until the judgment is final. ([Code Civ. Proc.] § 1049.)" (*Nassif v. Municipal Court, supra,* 214 Cal.App.3d at p. 1298.)

These cases tell us that even if—and that is not the case here—respondent had sought fees based on a governing-documents demurrer, it would be entitled to fees if it prevailed.

The majority seeks to distinguish *Palmer* from this case based on the purported difference between an "action to enforce" and an "action arising from." I find the discussion overly clever and hypertechnical. These are attorney fee provisions, similar to countless statutory and contractual attorney fee provisions. Such provisions should be interpreted broadly and liberally. (*Milman v. Shukhat* (1994) 22 Cal.App.4th 538, 545 [27 Cal.Rptr.2d 526] [Civ. Code, § 1717 mutuality]; *Kaplan v. Fairway Oaks Homeowners Association, supra,* 98 Cal.App.4th at p. 719.) Their only possible purpose is to discourage litigation by providing that when two parties get into in a lawsuit over the matters subject to the contract or statute, the winner gets fees. I simply cannot imagine that a lawyer or legislator ever reached the considered opinion that it was right and just that in some circumstances the party who files, but not the party who defends, may recover fees. What kind of sense would that make, if the context is not a laboratory analysis of language, but the ordinary lives of people, organizations, and their lawyers? None.

A search of the legislative history shows no trace of such an intent. Those legislative documents which mention the attorney fee provision in Civil Code section 1354 (the clause was added as part of a bill which primarily concerned solar energy) describe the provision as one which awards fees to the prevailing party "in any litigation to enforce" the CC&R's (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 3689 (1989–1990 Reg. Sess.) Aug. 23, 1990, par. 4; Sen. Housing and Urban Affairs Com., com. on Assem. Bill No. 3689 (1989–1990 Reg. Sess.) Aug. 2, 1990, par. 4.), or "in any action to enforce restrictions affecting common interest developments." (Assemblyman Hauser, sponsor of Assem. Bill No. 3689, letter to Governor, Aug. 28, 1990, p. 2.)

Finally, the majority's narrow reading of "action" seems to me to have the potential to unnecessarily confuse what are not, at the moment, confused issues. Does the majority suggest that a plaintiff who files a writ of mandate seeking to compel a board to act under the governing documents, and is successful, is not entitled to fees? After all, a writ is not an "action," it is a special proceeding. Suppose the governing documents established a statute of

limitations on suits against the board, and a board successfully moved for summary judgment on that ground? As I read the majority, that board would not be entitled to fees. Where is the logic in that result? I can see none, and would confine this opinion to a simple affirmance of the trial court's straightforward ruling.

A petition for a rehearing was denied September 9, 2004, and respondent's petition for review by the Supreme Court was denied December 1, 2004.