Filed 4/27/22  In re S.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.C., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E077826 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2100411) |
| v. | OPINION |
| J.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Harry (Skip) A. Staley, Judge.  (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part; reversed in part.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, Teresa K.B. Beecham and Prabhath D. Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

1

At a disposition hearing, the juvenile court ordered that S.C. remain removed from the physical custody of her father, J.C. (Father). (Welf. & Inst. Code, § 361, subd. (c)(1).)[1] Father raises four issues on appeal. First, Father contends the jurisdictional findings against him lack substantial evidence to support the elements of causation and substantial risk of serious physical harm. (§ 300, subd. (b)(1).) Second, Father asserts the petition was facially deficient because it failed to allege a substantial risk of serious physical harm. (§ 300, subd. (b)(1).) Third, Father asserts the juvenile court erred by failing to state the facts supporting the order removing S.C. from his custody. (§ 361, subd. (e).) Fourth, Father asserts that a non-offending parent may appeal from a disposition order. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL HISTORY

### A.     BACKGROUND

M.P. (Mother) has two daughters, who are half-sisters. Mother's elder daughter, V.P., was born in November 2011. V.P.'s father is O.P., who died in 2015. Mother's younger daughter, S.C., was born in April 2013. Father is S.C.'s presumed father.

In 2008, Father was convicted of attempted robbery and sentenced to three years eight months in prison. In 2013, in Los Angeles County, V.P. and S.C. were placed in protective custody due to methamphetamine abuse by Mother. Mother completed her case plan. In May 2015, the Los Angeles County juvenile court terminated the dependency case, placing S.C. in Mother's and Father's care and placing V.P. in

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

Mother's care. In July 2015, Father was convicted of battery. (Pen. Code, § 242.) Mother and Father's romantic relationship ended. Mother and Father orally agreed that Mother would have primary custody of S.C., and Father would have visitation.

On January 24, 2020, Father picked S.C. up from school and did not return her to Mother's custody. Father did not permit Mother and S.C. to have contact. S.C. remained in Father's custody, without any contact with Mother or V.P., through July 2021. S.C. stopped attending distance learning/school in March 2020, and Father did not enroll her in another school.

In March 2020, in the family court, Father filed a Petition to Establish a Parental Relationship as to S.C. At hearings in May 2020, June 2020, July 2020, and August 2020, the family court found Mother had not been served with the petition and ultimately took the case off calendar. On April 14, 2021, Mother filed an ex parte application concerning custody and visitation. The application was denied.

Mother works as a supervisor at a grocery store. Father works full time at a recycling center. Father resided in an apartment with his fiancée, his parents, and S.C. When S.C. was in Father's care, Father's mother "usually cared for [S.C.], not [Father]."

B.    DETENTION

On June 15, 2021, the Riverside County Department of Public Social Services (the Department) received a referral that Mother was abusing methamphetamine while V.P. was in her care. A Department social worker met with Mother. Mother did not appear to be under the influence of methamphetamine; she was calm and collected.

3

Mother declined a saliva drug test. Mother, who was 32 years old, admitted abusing methamphetamine when she was 17 years old; however, she went to drug treatment. Mother admitted relapsing and abusing methamphetamine three weeks prior to her meeting with the Department social worker. Mother "reported that [S.C.] is extremely behind in school."

The social worker also met with V.P., who was well groomed, appeared to be in good health, and did not have any visible marks or bruises. V.P. missed S.C. V.P. said "that [S.C.] wants to attend school in-person, but that her father 'lucked out' when COVID forced the schools to close. She further asserted that [S.C.] would like to attend school in-person, but that her father will not allow her to do so due to fears the mother will pick her up from school."

On June 18, 2021, Father was a suspect in a battery case. (Pen. Code, § 242.) On June 23, 2021, the Department social worker visited Father's home. S.C. was appropriately dressed and did not have any marks or bruises. Father appeared to be under the influence of methamphetamine; he had rapid speech, dilated pupils, and frequently scratched his skin. "[Father] appeared upset and frustrated as he raised his voice towards [the social worker]" becoming "increasingly hostile towards [her]." Father declined to take a saliva drug test. The following day, Father failed to appear for a urine drug test. The Department referred Father to drug treatment programs, but Father did not participate in them.

On July 6, 2021, the Department received a second referral in the instant case asserting that Father and his live-in girlfriend "smoke methamphetamine in front of [S.C.]. [Father] 'pops' [S.C.] with an open hand on her leg and bottom. About a week ago, [Father] punched his live-in girlfriend in her chest." On July 8, 2021, Mother told the Department social worker that "[Father] was drunk and driving with [S.C.] in the car where [*sic*] they almost got into a car accident." On July 16, 2021, the Department detained V.P. and S.C. V.P. was placed in foster care. S.C. was placed with her paternal aunt (Aunt).

On July 20, 2021, Mother tested positive for amphetamine and methamphetamine. That same day, Father failed to appear for a drug test. The detention hearing took place on July 21, 2021. At the hearing, the juvenile court said it would consider returning S.C. to Father's care at a future hearing if Father provided two negative drug tests—one test from the day of the detention hearing, and a random test.

C.     JURISDICTION AND DISPOSITION

Father failed to appear for drug tests on July 26 and August 13, 2021. S.C. had regular telephonic visits with Father. Father did not participate in reunification services. On August 19, 2021, the Department social worker called Father in order to interview him. Father "was extremely verbally aggressive from the beginning of the call. This behavior included, but was not limited to, screaming obscenities and personal insults." The social worker told Father that she understood he was upset, but that she would end "the call if he continued to curse at and insult her purposefully. In response, [Father]

5

became even louder and more aggressive with his comments. Therefore, [the social worker] terminated the call."

Aunt enrolled S.C. in school. S.C. was in a third grade class, but she was "struggling academically." "[Aunt] disclosed that [S.C.] becomes very frustrated and [has] tantrums when it is time to do her homework." The school planned to contact the Department about having S.C. "evaluate[d] for services."

On September 29, 2021, a contested jurisdiction and disposition hearing took place. Father requested a plan of family maintenance with S.C. placed in his care. Father testified at the hearing. Father said S.C. attended school online during the pandemic. Father denied abusing methamphetamine. Father works various shifts at the recycling center, sometimes the day shift, other times the night shift. Father asserted he failed to drug test because his car overheated, the busses do not run when his shifts end, no one would give him a ride, and the testing center is too far to walk.

Father's attorney argued that the social worker's observations regarding Father appearing to be under the influence of methamphetamine "mean nothing. It's her belief, her feeling." Father's attorney continued, "You have his testimony, Your Honor, under oath about he was not under the influence that day." The attorney asserted Father failed to drug test because Father lacked transportation to the drug testing center. The attorney concluded, "There is not one shred of evidence to say that my client is abusing drugs, under the influence of drugs, or has a continued problem with drugs."

6

The juvenile court said, "[S]uppose if the father had said from the beginning, I don't use drugs, and I'm not going to test for you, that would have been better than saying, I'm not going to test today, but I will test tomorrow. And we have months rolling by, and while I admire the father's love and care and concern for his daughter, his family support, and his girlfriend with him here today, he's got an excellent work history, all of that makes it extremely hard to imagine that he couldn't accomplish a drug test in this period of time." The court continued, "There is evidence that it is affecting the child. The child hasn't been enrolled in school appropriately."

As to Mother, the juvenile court found true the allegations that (1) Mother has abused methamphetamine starting at the age of 17, and despite completing a substance abuse treatment program in Los Angeles County, she continues to abuse controlled substances, admitting drug abuse as recently as June 2021 (§ 300, subd. (b)(1)); and (2) Mother is not a member of S.C.'s household, has been unable to maintain contact with S.C. for over a year, and has not provided S.C. with adequate food, clothing, shelter, medical treatment, and protection (§ 300, subd. (b)(1)).

As to Father, the juvenile court found true the allegations that (A) father abused controlled substances, including methamphetamine, and drank excessive amounts of alcohol while S.C. was in his care (§ 300, subd. (b)(1)); (B) Father neglected S.C.'s educational needs in that S.C. regularly did not attend school (§ 300, subd. (b)(1)); and (C) Father has a criminal history, including robbery (§ 300, subd. (b)(1)).

As to Mother and Father, the juvenile court found they had a prior dependency case in Los Angeles County from 2013 to 2015, and they failed to benefit from the

7

services offered in that case because they continue to abuse controlled substances. (§ 300, subd. (b)(1).) The court ordered S.C. removed from the physical custody of Mother and Father.

## DISCUSSION

### A.    SUBSTANTIAL EVIDENCE

Father contends that, in the jurisdictional findings against him, there is not substantial evidence to support the elements of causation and substantial risk of serious physical harm. (§ 300, subd. (b)(1).) For example, Father asserts there may be evidence that Father abused drugs, but there is not substantial evidence that the drug abuse caused S.C. to be at substantial risk of serious physical harm.

The Department concedes that substantial evidence does not support the findings that S.C. is at substantial risk of serious physical harm due to (1) not attending school; (2) Father having a prior conviction for attempted robbery; and (3) Father having a prior dependency case in Los Angeles County. (§ 300, subd. (b)(1).) Accordingly, we will reverse those findings.

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) If the court's decision is

8

"supported by substantial evidence, [then it] will not be reversed even though the trial court gave an incorrect reason for that ruling." (*People v. Gilchrist* (1982) 133 Cal.App.3d 38, 44.)

A child comes within the jurisdiction of the court under section 300, subdivision (b)(1), when "there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." (Former § 300, subd. (b)(1) [eff. through Dec. 31, 2021].) "A jurisdictional finding under section 300, subdivision (b)(1), requires [the Department] to demonstrate the following three elements by a preponderance of the evidence: (1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

Section 300, subdivision (b)(1) is focused on physical harm. The Department did not set forth allegations pursuant to section 300, subdivision (c), which concerns emotional harm. Thus, our analysis focuses on the juvenile court's finding that Father's drug and alcohol abuse places S.C. at substantial risk of serious physical harm.

On June 23, 2021, when the Department social worker met with Father for the first time, Father appeared to be under the influence of methamphetamine, in that his pupils were dilated, he spoke rapidly, and he frequently scratched his skin. Father was upset with the social worker and "raised his voice towards [her]." The foregoing

evidence indicates that when Father is under the influence of methamphetamine, he has angry outbursts.

In July 2015, Father was convicted of battery. (Pen. Code, § 242.) On June 18, 2021, Father was a suspect in a battery case (Pen. Code, § 242). On July 6, 2021, the Department received a second referral in the instant case asserting that Father and his live-in girlfriend "smoke methamphetamine in front of [S.C.] [Father] 'pops' [S.C.] with an open hand on her leg and bottom. About a week ago, [Father] punched his live-in girlfriend in her chest." The foregoing evidence indicates that Father is physically violent.

On August 19, 2021, a Department social worker spoke with Father over the phone and attempted to interview him. Father "was extremely verbally aggressive from the beginning of the call. This behavior included, but was not limited to, screaming obscenities and personal insults." The social worker told Father that she understood he was upset and warned that if he did not stop yelling, then she would end the phone call. "In response, [Father] became even louder and more aggressive with his comments." The social worker ended the call because it "was not productive, and only consisted of [Father] inappropriately yelling." The foregoing is further evidence of Father suffering angry outbursts, and indicates he is unable to control himself, as he grew louder and more aggressive when his emotions were acknowledged by the social worker.

Mother reported that Father frequently drank alcohol and "that he was drunk and driving with [S.C.] in the car where [*sic*] they almost got into a car accident." This evidence indicates that Father places S.C. at risk of physical harm by driving with her while intoxicated.

In sum, the record reflects that Father has angry outbursts when under the influence of methamphetamine; Father is physically violent; Father is unable to control his anger; and Father drives with S.C. while he is intoxicated. This evidence supports the finding that Father's abuse of controlled substances and alcohol is a cause of S.C. being at substantial risk of serious physical harm from Father violently striking S.C. or S.C. being in a car accident while she is in the car with Father.

Father points to evidence that he had housing and employment, and that S.C. appeared healthy and well cared for. Under the substantial evidence standard, " ' "[w]e do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' " (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) Because we do not reweigh the evidence, we do not discuss the evidence highlighted by Father.

B. DEMURRER

1. *LAW*

a. Petition and Demurrer

"A petition to commence proceedings in the juvenile court to declare a child a dependent child of the court . . . shall contain . . . [¶] . . . [¶] [a] concise statement of facts, separately stated, to support the conclusion that the child upon whose behalf the

11

petition is being brought is a person within the definition of each of the sections and subdivisions under which the proceedings are being instituted." (§ 332, subd. (f).)  "If the parent believes that the allegations, as drafted, do not support a finding that the child comes within section 300, the parent has the right to bring a motion akin to a demurrer." (*In re Kaylee H.* (2012) 205 Cal.App.4th 92, 107-108.)  " 'The function of a demurrer is to test the sufficiency of a pleading by raising questions of law.' " (*Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 672.)

### b.  Detention Rehearings

When a parent "requests evidence of the prima facie case [for detention], a rehearing shall be held within three judicial days to consider evidence of the prima facie case," unless a witness is unavailable and then the rehearing can be held within five days.  (§ 321.)  "In lieu of a requested rehearing, the court may set the matter for trial within 10 days."  (*Ibid.*)

### 2.  *PROCEDURAL HISTORY*

On July 20, 2021, the Department filed the original petition in the case, which alleged, in part, that S.C. was at substantial risk of suffering physical harm because Father "abuses controlled substances to include but is not limited to, methamphetamine and excessive use of alcohol, while providing care to the child, [S.C.]  On 06/23/2021, he father [*sic*] refused to submit to an oral drug test and he failed to appear for an on-demand test scheduled for 06/24/2021."  The petition was drafted by a Department employee; it was not drafted by an attorney.

12

On July 21, 2021, during the detention hearing, Father's attorney said, "When I look at the petition, Your Honor, I'm not sure why county counsel is not writing the petition." In other words, Father's attorney asserted the Department's petition should have been drafted by County Counsel. Father's attorney went on to explain why he believed the detention report was deficient. Father's attorney then returned to the petition asserting, "The petition itself is very conclusionary. There is no reason to detain [S.C.] from [Father's] care. . . . [¶] So it's just frustrating. If the Court is inclined to detain, I'm going to ask for a detention re hearing [*sic*], have the worker testify about her report." County Counsel argued that the petition and the detention report were sufficient.

The juvenile court explained that a rehearing would have to occur within one to five days. The court said that it would be inclined to return S.C. to Father if Father had two negative drug tests—one test on the day of the detention hearing and one random test. The juvenile court said, "I would like to have some test results for your client. If we do a detention re hearing [*sic*], we will come back in [a] few days. We will not have those results, so I don't know what your thoughts are. We can do maybe a 10-day juris hearing. But I do recognize your client's concerns and your arguments today."

Father's attorney asked, "What would be the 10-day date? That way the child can go on the trip." S.C. was planning to take a trip to Lake Havasu with Aunt. The court said the 10-day date would be August 2 or 3, which would provide time "to get testing." The court set the 10-day jurisdiction hearing for August 2.

13

2.    *ANALYSIS*

Father asserts the petition was facially deficient because it failed to allege a risk of serious physical harm.  The Department asserts Father forfeited this issue both by (1) effectively withdrawing any challenge to the petition by accepting a 10-day jurisdiction hearing in place of a detention rehearing; and (2) by failing to file a written demurrer in the juvenile court.

" '[E]ven though a complaint is defective in some particular [manner], if the case is tried on the theory that it is sufficient and evidence accordingly is received without objection, the unsuccessful party cannot later effectively contest the sufficiency of the pleading.' " (*In re Athena P.* (2002) 103 Cal.App.4th 617, 627.)

In the juvenile court, Father's attorney asserted the petition was conclusory and indicated he wanted a detention rehearing in order to "have the worker testify about her report."  But then counsel agreed to a trial/jurisdiction hearing on the petition, scheduled 10 days out, so that S.C. could attend a trip with Aunt and Father could submit results from at least one drug test.  Father's attorney's allegations in the juvenile court regarding a deficient petition did not preserve the issue for appeal because Father agreed to proceed to trial on the petition.

Father asserts he may demurrer to the petition for the first time on appeal. "There is a split of authority on whether a parent waives the right to challenge the sufficiency of the allegations in a dependency petition on appeal after failing to raise the issue by demurrer or other procedural mechanism in the juvenile court." (*In re James C.* (2002) 104 Cal.App.4th 470, 480; see also *In re David. H.* (2008) 165 Cal.App.4th

14

1626, 1637.) Father fails to acknowledge there is a split of authority on the issue and thus fails to provide any legal analysis of the split of authority.

Further, Father fails to provide any legal analysis of how he is raising this issue for the first time on appeal when he raised the issue in the trial court and nevertheless agreed to proceed to trial. Due to Father's failure to provide reasoned legal analyses of these issues on appeal, we find Father's contention unpersuasive.

### C. REMOVAL ORDER

#### 1. *PROCEDURAL HISTORY*

Toward the end of the disposition hearing, the juvenile court said, "Reasonable efforts were made to prevent or eliminate the need for removal of the children from the home of the parents. [¶] There is clear and convincing evidence of circumstances set out in WIC section 361 regarding both parents, and that's (c)(1). Physical custody of [V.P.] is removed from [Mother]. And the physical custody of [S.C.] is removed from both parents, [Mother] and [Father]."

#### 2. *SECTION 361*

"A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

15

Further, "[t]he court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "[t]he court shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

### 3. *FORFEITURE*

Father asserts the juvenile court erred by failing to state the facts supporting the order removing S.C. from his custody. The Department contends Father forfeited this issue by failing to object in the juvenile court. We agree. The juvenile court's failure to state the facts supporting its finding is not preserved for appeal unless an objection is raised in the juvenile court. (*Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal' "].)

In *People v. Tillman* (2000) 22 Cal.4th 300, 302, the Supreme Court wrote, "The restitution fine under [Penal Code] section 1202.4 is mandatory unless the sentencing court, in the words of the statute, 'finds compelling and extraordinary reasons for not doing so and states those reasons on the record.' " The high court explained, "At times, sentencing courts have failed to discharge the duty imposed by these statutes, omitting the fines from judgments of conviction without making the required finding on the record. In several such cases, the People have sought to have the omission supplied while the case was on appeal, asking the Court of Appeal to amend the trial court's judgment to add the fines." (*Ibid.*)

16

The Supreme Court reasoned, " 'Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention.' " (*People v. Tillman*, *supra*, 22 Cal.4th at p. 303.) The high court concluded that the People's lack of objection at the sentencing hearing to the trial court's failure "to state on the record its reasons for not imposing the restitution fines" meant the People could not "obtain[] the relief they seek on appeal." (*Id.* at pp. 302-303.)

Father did not object in the juvenile court to the court's failure to state the facts supporting its findings. Accordingly, the issue has been forfeited.

  4.  HARMLESS ERROR

Nevertheless, to the extent one would reach the merits of the issue, the error is harmless. The juvenile court erred by failing to state the facts supporting its decision to remove S.C. from Father's physical custody. (*In re L.O.* (2021) 67 Cal.App.5th 227, 246-247; *In re D.P.* (2020) 44 Cal.App.5th 1058, 1067.) We examine whether it is reasonably probable that, if the juvenile court had stated the facts supporting its decision, then a decision more favorable to Father would have been made. (*L.O.*, at p. 247.)

At the detention hearing on July 21, 2021, the juvenile court said, "And I will just indicate, especially as to father and [S.C.], I'm interested in those drug test results. Because my consideration is to potentially return [S.C.] to your care if they're

negative." The juvenile court said it wanted one drug test from the day of the detention hearing and a random drug test.

Father failed to drug test on June 24, 2021; July 20, 2021; July 26, 2021; and August 13, 2021. It appears Father took a drug test on September 22, 2021; however, the results of that test are not in the record.

At the disposition hearing on September 29, 2021, Father's attorney argued in favor of S.C. being placed with Father on a plan of family maintenance. Father's attorney then argued, "If the Court is not inclined to place the child with [Father] today, we ask upon [Father's] submission of two clean [urinalysis] tests, that the child be placed back in his care and custody. We have been waiting a couple months to have a resolution of this, and that is my request."

The juvenile court explicitly said at the detention hearing that it wanted two negative drug tests from Father prior to placing S.C. in Father's care. At the disposition hearing, Father's attorney seemingly recalled that requirement when he modified his request by asking for S.C. to be placed with Father after Father submitted two negative drug tests. Thus, one can reasonably infer that if the juvenile court had stated its reasons, it would have said something to the effect of "I told Father he needed to provide two negative drug tests. Father had three months to provide two negative drug tests. Father has not provided two negative drug tests. The Department made reasonable efforts by repeatedly referring Father for drug tests. Therefore, I find . . . ." At which point, the juvenile court would have made the same findings. As a result, if the juvenile court had stated the facts supporting its removal decision, then it is not

18

reasonably probable that a result more favorable to Father would have occurred. In sum, the error was harmless.

Father asserts "this Court should not imply findings" and "requests that this Court should reject the Department's invitation to bypass what the Legislature has determined to be an absolute necessary to have express findings made by the juvenile court before a parent loses custody of his or her child." Father asserts the juvenile court should have discussed alternatives to removing S.C. from the home, which the court could not have done because "the Department's reports contain no such discussion excepts [*sic*] its efforts to force [F]ather to drug test and enroll in programs even before the jurisdictional and dispositional hearing."

The Department initially visited Father on June 23, 2021. The Department offered Father a saliva drug test, which he declined. The Department referred Father for a urine drug test, and he failed to appear for it. The social worker "recommended counseling services and mental health services" and referred Father to substance abuse treatment. Father did not participate in any of the services offered. On July 6, 2021, the Department received a second referral in the case indicating that Father abused methamphetamine in S.C.'s presence, that he hits S.C., and that he physically abused his fiancée. On July 16, 2021, the Department removed S.C. from Father's physical custody.

The foregoing reflects the Department tried leaving S.C. in Father's custody, but Father did not drug test, he did not participate in services, and the Department learned that Father was physically violent. Given that the Department tried leaving S.C. in

19

Father's custody, we are not persuaded that the juvenile court failed to consider alternatives to removal.

Further, to the extent Father is asserting that the juvenile court should have made a different order, e.g., Father moving out of the home, rather than S.C. moving out of the home (§ 361, subd. (c)(1)(A)), that is the precise reason that Father needed to object in the juvenile court. Father does not explain on appeal what viable alternatives to removal the juvenile court missed; he simply asserts the juvenile court should have discussed something more. Because Father fails to explain why it is reasonably probable an order more favorable to Father would have been entered absent the error, we find Father's argument to be unpersuasive.

In an alternative argument, Father contends, "As an issue of first impression, this Court should hold that the juvenile court's adopting of the recommendation to remove a child from a parent, without making the express findings required under section 361, as happened here, results in the violation of the separation of powers doctrine as there is no judiciary rendering mandated findings before a parent's fundamental rights to custody are severed."

" '[L]egal issues arise out of facts, and a party cannot ignore the facts in order to raise an academic legal argument.' " (*Bains v. Department of Industrial Relations* (2016) 244 Cal.App.4th 1120, 1130.) The juvenile court made the required findings. The court said, "There is clear and convincing evidence of circumstances set out in WIC section 361 regarding both parents, and that's (c)(1)." That statement was the necessary finding under section 361, subdivision (c). The court also said, "Reasonable efforts

20

were made to prevent or eliminate the need for removal of the children from the home of the parents." That statement was the required finding under section 361, subdivision (e).

What the court failed to do was state the facts supporting its findings. (§ 361, subd. (e).) Because the court made the required findings, we do not address the argument raised by Father which is premised upon "no judiciary rendering mandated findings." (*Bains*, *supra*, 244 Cal.App.4th at p. 1130.)

D.     APPEAL BY A NON-OFFENDING PARENT

Father asserts that he is "arguably a non-offending parent." With that premise, Father requests this court decide, "as a matter of first impression," whether a non-offending parent may appeal from the disposition order.

As noted *ante*, " 'legal issues arise out of facts, and a party cannot ignore the facts in order to raise an academic legal argument.' " (*Bains*, *supra*, 244 Cal.App.4th at p. 1130.) Father is an offending parent. Accordingly, we do not address the merits of this contention, which is premised upon the hypothetical scenario of Father being a non-offending parent.

The Department asserts "[t]he appeal should be dismissed" because Mother has not appealed the jurisdictional findings made against her, and this court cannot reverse as long as there are jurisdictional findings against Mother. We decline to dismiss the appeal.

21

## DISPOSITION

The jurisdictional findings concerning S.C. being at risk of physical harm (§ 300, subd. (b)(1)) due to not attending school (allegation b-5); Father having a prior conviction for attempted robbery (allegation b-7); and Father having a prior dependency case in Los Angeles County (allegation b-8) are reversed.  In all other respects, the orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

McKINSTER

Acting P. J.

CODRINGTON

J.